No. 24120

L. P. McArthur, R. C. Eaton, Jr., Robert L. Eaton, Tate M. Todd, and Penny M. Butterfield v. Dorothy M. Zabka, George W. Hall, Thomas R. Rapp, Jr., James R. Rucker, Jr., L. Wayne Wells, Charles A. Gregory, and Harold L. Hyde, individually and as Members of the City Council of Greeley, Colorado, and The City of Greeley, a municipal corporation

(494 P.2d 89)

Decided February 28, 1972.

Hoffman, Goldstein & Armour, Alan A. Armour, for plaintiffs in error.

William E. Bohlender, City Attorney, City of Greeley, for defendants in error.

*En Banc.*

MR. JUSTICE KELLEY delivered the opinion of the Court.

The plaintiffs are the owners of a certain irregular tract containing 18.6 acres which was the subject of rezoning by the City Council of the City of Greeley. The plaintiffs will be referred to as "owners." The defendants are the Mayor and members of the City Council of Greeley and the City itself.

On April 5, 1967, the subject property was unilaterally annexed by the City of Greeley pursuant to the Municipal Annexation Act of 1965, 1965 Perm. Supp., C.R.S. 1963, 139-21-5(1), as an unincorporated area entirely contained within its boundaries. Thereafter, the City initiated procedures to bring the annexed property under its zoning code and map. The owners challenge the validity of the amendment of the zoning map in reference to their property on the ground that the City did not follow its own procedures.

■ The City of Greeley on June 24, 1958, adopted a home rule charter pursuant to Article XX of the Constitution of the State of Colorado. Therefore, we must look to the charter and ordinances of the City to determine the proper procedures to be followed in amending the zoning map to encompass the newly annexed land.

Article XIX of the charter is devoted to "Planning, Zoning and Housing." Provisions are made for a city planning commission (19-1) and the appointment and terms of its members (19-1, 2).

Section 19-3 defines the duties and powers of the Planning Commission, which, among others, are:
"a. Make, amend and add to the Master Plan for the physical development of the City as defined in Section 19-6 (Master Plan) of this Article;
"b. Exercise control over platting or subdividing land within the City;
"c. Draft for the City Council an official map of the City and recommend or disapprove proposed changes in such map;
"d. Make and recommend as provided in Section 19-9 of this Article a zoning plan for the City and recommend or disapprove proposed changes in such plan."

This same Article — Section 19-9 — delegates to the Council the authority to zone the City by regulating "the location, height, bulk and size of buildings. . . yards, . . . density of population and the uses of buildings. . . and land for trade, industry, business, residence or other purposes," by ordinance.

In compliance with the charter mandate, it "appears" that

the Planning Commission made a Master Plan (19-3-(a)); drafted for the City Council an official [zoning] map (19-3-(c)); and made and recommended as provided in Section 19-9 a zoning plan. This "appears" to be true because the City Council on September 8, 1959, adopted a comprehensive zoning ordinance. Chapter 23, Code of Ordinances.

As a part of the zoning ordinance, the City Council provided a specific procedure for amending "the text of this Code" (the zoning code) or "the official zoning map." Article V, Chapter 23.

The code provides that amendments to the zoning map may be initiated by (1) the petition of property owners or by (2) the resolution of either the City Council or (3) the Planning Commission. Sec. 23-47. In the instant case, the proposed amendment was initiated by the City Council.

The application for a zoning amendment is required to be filed with the secretary of the Planning Commission. Sec. 23-48. The ordinance then provides the procedure to be followed by the Planning Commission in reviewing proposed amendments of the official zoning map. Sec. 23-49. Upon the conclusion of the review it is directed to report "its recommendations and comments" to the City Council.

In the instant case the Planning Commission had considered the zoning of the subject property on at least two occasions prior to annexation. On May 4, 1961, the Planning Commission approved a map which it designated, "Guide for Growth." Although not an official zoning map, it did show the zoning classifications of the several areas within the City as well as the zoning (or recommended zoning) of areas beyond the corporate limits. The map, so far as it related to property outside the city limits, either represented the Planning Commission's proposed zoning upon annexation or prior county zoning. See C.R.S. 1963, 106-2-9(5)(a), (b).

On January 5, 1966, some fifteen months prior to annexation, the minutes of the Planning Commission disclose that it recommended that,

". . . if at any time a petition is presented to annex the 18.6 acres on the south side of 16th Street that the Planning

Commission recommend to the City Council that this be zoned B-3 with the exception of R-3 and R-4 west and south along 25th Avenue and 18th Street a depth of 140 feet plus 20 feet for an alley."

It should be noted that although the "Guide for Growth Map" showed the entire 18-acre tract as "shopping center," the Planning Commission recommended to City Council a multi-family residential buffer zone along the west and south sides of the 18-acre tract so that the single-family residential areas to the south and west of the proposed shopping center would be insulated from the shopping center. This action on "review" by the Planning Commission demonstrates that the "Guide for Growth Map" was exactly what its name implies and was part of the Master Plan, but that both modifications and refinements to the map occurred when it made its recommendations to the Council.

The annexation ordinance was adopted April 18, 1967. On June 7, 1967, the Planning Commission held a public hearing on "the topic of rezoning 16th Street and 23rd Avenue." It appears from the transcript of the proceedings that the owners were "proponents of recommendation" and that residents of the area appeared by counsel and were the "opponents of recommendation."

Counsel for the *opponents,* on November 2, 1966, filed with the Planning Commission petitions containing the signatures of 200 residents expressing opposition to the zoning of another piece of property directly north across 16th Street from the subject property as an R-4 zone as proposed in a zoning ordinance then being considered. The petition concluded with this reference to the 18-acre tract: "We wish it also to be known that whenever the piece of property on the southwest corner of said intersection is brought into the City of Greeley that it also not be zoned any lower than an R-2 zone."

On July 5, 1967, the City Council held a hearing on the proposed zoning. Substantially, the same evidence presented to the Planning Commission was presented to the Council. Following the hearing, with the consent of the owners, the

Council adopted a motion to take the matter "under advisement for two weeks."

The proceedings of the City Council for July 18, 1967, disclose the following:

"4. DECISION CONCERNING ZONING OF 16TH STREET AND 23RD AVENUE. Motion by Councilman Scott, seconded by Councilman Gregory to accept the recommendation of the Planning Commission and zone the area B-3, R-3 and R-4 as requested and authorize the City Attorney to prepare the necessary ordinance. Roll call resulted in AYES: Councilmen: Gregory and Scott. NAY: Councilmen Boettcher, Hall, Hyde, Otis and Mayor Zabka. Motion did not carry.

"Motion by Councilman Otis, seconded by Councilman Boettcher to zone the area R-3 and authorize the City Attorney to prepare the necessary ordinance. Roll call resulted in AYES: Councilmen: Boettcher, Gregory and Otis. NAY: Councilmen: Hall, Hyde, Scott and Mayor Zabka. Motion did not carry.

"Motion by Councilman Hyde, seconded by Councilman Boettcher to zone the area R-1 and authorize the City Attorney to prepare the necessary ordinance. Roll call resulted in AYES: Councilmen: Boettcher, Gregory, Hall, Hyde and Mayor Zabka. NAY: Councilmen: Otis and Scott. Motion carried."

The owners have challenged the validity of the foregoing action by City Council on the ground that it failed to follow both the substantive and procedural provisions of the charter and ordinances of the City of Greeley and such failure constituted a denial of due process. The trial court disagreed, sustaining the City's action. We reverse, basing our decision on the procedural deficiencies.

Following the receipt of the Planning Commission's "recommendations and comments," Sec. 23-49 requires the City Council to hold a public hearing in order to permit further public discussion of the proposal. By Sec. 23-50(2) the Council is then enjoined to *approve* the rezoning request, *disapprove* the rezoning request, or *refer it back* to the

Planning Commission for additional study.

Regarding the role of the Council in amendment procedure (Sec. 23-50(2)), the court, in its decree under *Conclusions of Law,* held,

". . . that the provisions set forth herein applies [sic] only to the rezoning of property that had been theretofore zoned in accordance with law, and the requirements set forth therein have no application in this case."

In so holding the trial court erred.

Apparently, counsel failed to bring to the trial court's attention Sec. 23-11 of the zoning code which bears directly on this point. Sec. 23-11 provides that:

"All territory which may hereafter be annexed to the City of Greeley shall be zoned according to such district classifications and descriptions as may be made a part of the annexation notices and procedures *or such district classifications as may be adopted for the annexed territory according to normal zoning amendment procedures and in accordance with applicable state law.* " (Emphasis added.)

It is clear that the Council at the outset contemplated following its normal zoning amendment procedures in zoning the newly annexed territory.

■ The Council's failure to adhere to its own ordained procedure by denying the zoning recommended by the Planning Commission and then, without further review by the Planning Commission, considering and rejecting R-3 zoning and then amending the zoning map by zoning it R-1 was a material departure from Sec. 23-50(2).

■ The owners had a right to rely upon the terms of Sec. 23-50(2) of the amendment procedure, limiting the Council's action to (1) *approval,* or (2) *disapproval,* or (3) disapproval and referral back to the Planning Commission for further study.

There is a sound basis for the limitation of action imposed upon the Council by the terms of the zoning amendment procedure in Sec. 23-50(2). The charter in Sec. 19-3 (see *supra* for full text) provides that the Planning Commission shall:

"d. Make and recommend as provided in Section 19-9 of this Article a zoning plan for the City and recommend or disapprove proposed changes in such plan."

Thus, it appears that the citizens of Greeley, by charter, had provided the Council with an advisory body to deal with a very limited area of the Council's responsibility. Presumably, it was contemplated that the Planning Commission would have some expertise in the limited field of its responsibility. Further, it appears that the Planning Commission would study and research the proper use of particular tracts in their relationship to the Comprehensive Plan adopted for the purpose of promoting the health, safety, morals and general welfare of the City, as prescribed in Sec. 23-49 of the zoning code. Because the Planning Commission is required to deal with the various parts of the City in their relationship to each other and the City as a whole, the City Council apparently felt that if, after a rejection of a recommendation, it wished to consider other alternatives that it should again seek the advice of its Planning Commission.

■ From the standpoint of due process, the property owners have the right to proceed upon the assumption that the Council will follow the dictates of the charter and the ordinances enacted pursuant thereto in reference to zoning. In the instant situation, it appears that the Planning Commission, both before and after annexation, had considered B-3 alone and B-3 in combination with R-4 and R-3, but had not considered R-4, R-3, R-2 and R-1, or any combination thereof. Likewise, when the Council conducted its hearing on July 5, 1967, it heard testimony and arguments directed to accepting or rejecting the recommendation of the Planning Commission. There was no hearing, either before the Planning Commission or the Council, at which the property owners were afforded an opportunity to prove that R-1 was not the proper zoning for their tract or that such zoning would be confiscatory, if such were the case.

Also, no opportunity, under the procedure followed here, was given the landowners to attempt to show that R-4, R-3 or R-2, or some combination thereof, would be feasible and

compatible with the zoning of the adjacent property, and consistent with the Comprehensive Plan. It is conceivable that those who objected to the proposed zoning would not have objected to some class or combination of classes of zoning between B-3 and R-1. As a matter of fact, as noted above, the petitions filed with the Planning Commission expressed the wish that the tract "not be zoned any lower than an R-2 zone."

At any rate, fairness requires that the Council follow its own rules when it deprives the owners of their right to use their property as they wish. Or, put another way, the Council, in the exercise of its police power, must afford procedural due process as it has been delineated in its zoning code. The public, or at least those whose interests are affected by a zoning amendment, have the right to rely upon the Council following its own ordained procedures.

This, of course, does not limit the Council in its ultimate authority over zoning. In situations where there is existing zoning, if the Council determines that the proposed amendment in the zoning map will not serve the public welfare, it may simply reject the recommended amendment, leaving the map unchanged. If, on the other hand, it concludes that a change is desirable, but that the amendment recommended by the Planning Commission is not acceptable, it must refer the matter back to the Planning Commission for further review. When, as here, the Council rejects the initial recommendation, the Planning Commission at the second hearing should only consider classifications other than the one expressly rejected by the Council.

The second review might not, under all circumstances, be essential to meet the procedural requirements of Greeley's zoning code. If, on the initial review, the Planning Commission had considered the several classifications between B-3 and R-1, giving the proponents and opponents an opportunity to present their evidence and arguments in support of their respective positions, and the Planning Commission had reported its findings and conclusions (recommendations and comments) to the Council, and the Council, in turn, had

considered the several intervening classifications and adopted an amendment to the zoning map, which included a classification or classifications within the scope of the hearing, it could be said that due process requirements had been met.

By the foregoing we do not determine that the requirements of due process in zoning amendment procedure cannot be fulfilled by anything less demanding. The Greeley City Council has it within its power the right to change its zoning amendment procedure, providing it does not run afoul of its own charter and the constitutional requirements of due process.

The judgment of the trial court is reversed and the cause is remanded to the District Court with directions to refer the cause to the City Council of Greeley for further proceedings not inconsistent with the views expressed herein.

MR. JUSTICE GROVES and MR. JUSTICE ERICKSON concur in the result.

MR. JUSTICE LEE not participating.