NATIVE AMERICAN RIGHTS FUND, INC., Plaintiff–Appellant,

v.

The CITY OF BOULDER, a municipal corporation; The City Council of the City of Boulder by its Mayor and City Council member, William Toor; Boulder City Manager, Ron Secrist; Deputy Mayor and City Council member, Donald Mock; and Other City Council Members: David Corson, Thomas Eldridge, Spencer Havlick, Richard Lopez, Lisa Morzel, Francoise Poinsatte, and Gordon Riggle, Defendants–Appellees.

No. 02CA2243.

Colorado Court of Appeals, Div. IV.

March 11, 2004.

Rehearing Denied April 22, 2004.

Certiorari Denied Aug. 16, 2004.

Patton Boggs, L.L.P., Carolyn L. McIntosh, J. Shannon Ponder, E. Adams Miller, Jennifer C. Miner, Denver, Colorado, for Plaintiff–Appellant.

Joseph N. de Raismes, III, City Attorney, Jerry P. Gordon, Assistant City Attorney, Boulder, Colorado, for Defendants–Appellees.

Opinion by Judge LOEB.

Native American Rights Fund, Inc. (NARF) appeals the district court's order denying its claims against defendants, the City of Boulder, the City Council, and various city officials and council members (collectively City). NARF sought a declaratory judgment or a finding under C.R.C.P. 106(a)(4) that certain city ordinances that created and then purported to amend the Grandview Terrace Historic District (District) are invalid or that the properties owned by NARF within the District are exempt. We reverse.

In October 1999, the Colorado Arts and Crafts Society (CACS) applied to list the Grandview Terrace area on the National Register of Historic Places. That area included thirty-eight properties, approximately thirty of which were or are now owned by the University of Colorado. NARF owns two properties included in that area.

The City of Boulder Land Preservation Advisory Board (LPAB) found that Grandview Terrace met the National Register criteria. However, Grandview Terrace could not be listed because of written objections by a majority of the private property owners in the area.

Immediately thereafter, the CACS filed an application with the City to designate the Grandview Terrace area as an historic district under Boulder Municipal Code § 10–13–1, et seq. (1981). In December 1999, the LPAB conducted a quasi-judicial hearing, at which supporters of the proposed district testified, as did representatives from NARF and the University, who both objected to the designation. The LPAB recommended the designation to the City Council.

In January 2000, the City Council held a quasi-judicial hearing on the application for designation, filed as Ordinance 7038. Representatives from NARF and from the University testified and objected to the designation. In February 2000, after a second reading, Ordinance 7038 was approved by the City Council.

Throughout this process, the City and the University disagreed as to whether and to what extent the University was immune from the City's historic preservation requirements, as set forth in the City's municipal code. Therefore, in an attempt to preserve the University properties to the extent possible without directly litigating the sovereign immunity issue, the City included Section 8 in Ordinance 7038. As originally drafted, Section 8 allowed the City to enter into privately negotiated agreements with the University concerning alteration, removal, or demolition of buildings within the District, so long as the City first sought the advice of the LPAB. Before passage of the ordinance, and in response to concerns about equal protection objections, Section 8 was amended to allow the City to enter into such agreements with other private property owners as well. The final version of Section 8 provides:

> Notwithstanding the other provisions of the city code and this ordinance, the [Boulder City] council may by motion approve memoranda of understanding among the city, the University of Colorado, and/or any private property owners concerning the alteration, removal or demolition of a building or buildings in the Grandview Terrace Historic District. However, prior to approving any such memoranda of understanding, the council shall seek the advice of the Landmarks Preservation Advisory Board.

In the spring of 2000, pursuant to Section 8, the City began confidential negotiations with the University and certain historic preservation groups concerning the University's properties located within the District. NARF was excluded from these negotiations. The negotiations continued for many months and, in November, culminated in a Memorandum of Agreement (MOA), which allowed the University immediately to demolish many of its buildings in the District and which exempted the balance of the University's structures from the City's historic designation requirements until specified ten- or twenty-five-year periods had expired.

In December 2000, the LPAB considered the MOA, but did not hold a public hearing. The record reflects that the LPAB had concerns that the MOA did not meet the standards of the historic preservation code, and it advised the City Council that the MOA did not "meet the spirit of the Historical Designation Code." The LPAB nevertheless recommended that the City Council approve the MOA because it provided some protection to certain of the University's buildings in the District.

The City Council then moved to adopt Ordinance 7103, the sole purpose of which was to approve the MOA. The City Council heard public testimony from NARF and others on Ordinance 7103, but did not hold a quasi-judicial hearing on the matter. The City Council then approved Ordinance 7103 by a vote of 6–2.

In accordance with the MOA, the University demolished numerous buildings in the District originally protected under Ordinance 7038, including some buildings near or adjacent to NARF's properties.

NARF filed a complaint in the district court, arguing that the City violated its constitutional rights in enacting Ordinances 7038 and 7103 and that the ordinances violated the substantive and procedural requirements of historic designation under Boulder Municipal Code § 10–13–1, et seq. NARF requested declaratory relief that both ordinances were invalid and that the resulting historic district

was therefore invalid or that NARF's properties be excluded from the District. The district court denied all NARF's requests for relief. This appeal followed.

We conclude that Ordinance 7038 is invalid because Section 8 of that ordinance allows the City to bypass the due process requirements set forth in § 10–13–1 et seq., and that Ordinance 7103 is also invalid because it was passed pursuant to Section 8 and accordingly did not adhere to those due process requirements.

## I. Standard of Review

■ On appeal, the parties disagree regarding the proper standard of review. The City contends that C.R.C.P. 106(a)(4) provides the sole mechanism of review and that this court should review the City's actions for abuse of discretion. NARF contends that this court should review the legal validity of the ordinances and the City's actions under C.R.C.P. 57. We agree with NARF.

■ Review under C.R.C.P. 106(a)(4) is appropriate where any governmental body or officer has exercised "judicial or quasi-judicial functions." *Condiotti v. Bd. of County Comm'rs,* 983 P.2d 184 (Colo.App.1999). Review under C.R.C.P. 106(a)(4) is limited to review of the record to determine whether the governmental tribunal has abused its discretion or exceeded its jurisdiction. *Widder v. Durango Sch. Dist. No. 9–R,* 85 P.3d 518 (Colo.2004); *Norby v. City of Boulder,* 195 Colo. 231, 236, 577 P.2d 277, 280 (1978). Legislative actions are reviewed de novo under C.R.C.P. 57(b). *Norby v. City of Boulder, supra.*

■ Generally, an action is quasi-judicial when it involves the determination of rights, duties, or obligations of specific parties by applying existing legal standards to past or present facts to resolve the particular interests in question. Legislative action, on the other hand, usually reflects public policy relating to matters of a general character, is usually prospective, and is not normally restricted to identifiable persons or groups. *Condiotti v. Bd. of County Comm'rs, supra; see also City & County of Denver v. Eggert,* 647 P.2d 216 (Colo.1982)(act of municipal leg-

islative body is quasi-judicial where law requires notice to community, public hearing, and application of facts of specific case to certain criteria established by law).

■ However, even in the context of a quasi-judicial proceeding, review under C.R.C.P. 57 may be proper where a declaratory judgment is requested and C.R.C.P. 106(a)(4) does not provide an adequate remedy. For instance, constitutional questions and challenges to the overall validity of a statute or ordinance are more properly reviewed under C.R.C.P. 57. *See Denver Ctr. for Performing Arts v. Briggs,* 696 P.2d 299, 305 (Colo.1985); *Norby v. City of Boulder, supra. See also,* C.R.C.P. 57(j) (contemplating declaratory judgment proceedings which involve the validity of a municipal ordinance).

Here, we conclude that review of the overall validity of the challenged ordinances under C.R.C.P. 57 is appropriate.

The actions of the LPAB and City Council in designating the District through the enactment of Ordinance 7038 were quasi-judicial in nature. The actions of the LPAB and City Council in approving the MOA by the enactment of Ordinance 7103 were treated by those bodies as legislative, but, as we conclude below, should have entailed all the due process elements of quasi-judicial proceedings. With respect to both ordinances under review, the matters concerned the rights, duties, and obligations of specific individual property owners and did not constitute a general rule or policy applicable to an open class of individuals. *See Margolis v. Dist. Court,* 638 P.2d 297 (Colo.1981)(rezoning is legislative for purposes of referendum and initiative but quasi-judicial for purposes of judicial review).

Nevertheless, because NARF requested a declaratory judgment that both ordinances are invalid and deprive affected property owners of the due process protections in § 10–13–1, et seq., review under C.R.C.P. 57 is appropriate. *See Norby v. City of Boulder, supra.* Moreover, NARF's allegations were not considered by the City in the course of passing the ordinances, and therefore relief based on these alleged violations is not available under C.R.C.P. 106(a)(4). *Cf. Den-*

ver Ctr. for Performing Arts v. Briggs, supra (C.R.C.P.106(a)(4) review sufficient where constitutional issues were addressed administratively and thus became part of administrative record reviewed).

## II. Violation of Boulder Code § 10–13–1, et seq.

NARF contends that Ordinances 7038 and 7103 are invalid because Section 8 of Ordinance 7038 allows the City to bypass the quasi-judicial requirements of the Code and Ordinance 7103, which approved the MOA, was passed in violation of those same requirements. We agree.

Initially, we disagree with the City that NARF failed to raise these issues in the district court. Although the court did not address these specific arguments in its order, NARF's amended complaint specifically requested declaratory relief that the ordinances were invalid and inconsistent with the due process requirements set forth in the City's Historic Preservation Code.

### A. Ordinance 7038

■ When a city takes quasi-judicial action, it must engage in quasi-judicial proceedings that provide affected individuals with due process, including notice and an opportunity for a hearing. See Landmark Land Co. v. City & County of Denver, 728 P.2d 1281 (Colo.1986)(court must overturn quasi-judicial action where quasi-judicial procedures are not performed); Tepley v. Pub. Employees Ret. Ass'n, 955 P.2d 573, 578 (Colo.App. 1997)(when agency acts in quasi-judicial capacity, procedural due process requires that agency give notice and afford opportunity for a hearing to affected individuals); cf. Cottrell v. City & County of Denver, 636 P.2d 703, 710 (Colo.1981)(where municipal agency is acting in quasi-legislative rather than quasi-judicial capacity, there is no constitutional requirement for notice and a hearing).

■ Moreover, when passing an ordinance to designate an area as an historic district, the City is bound by its own procedures and standards contained in its municipal code. City of Colorado Springs v. Securcare Self Storage, Inc., 10 P.3d 1244, 1247 (Colo.2000)(legislative authority to adopt and implement zoning policies, in turn, is governed and limited by city's own charter and ordinances); McArthur v. Zabka, 177 Colo. 337, 345, 494 P.2d 89, 93 (1972)("The public, or at least those whose interests are affected by a zoning amendment, have the right to rely upon the Council following its own ordained procedures.").

■ It is not necessary that the City Council strictly comply with all its ordained procedures. Substantial compliance is all that is required, and only material departures that deprive a citizen of due process will result in nullification of an ordinance. Lot Thirty–Four Venture, L.L.C. v. Town of Telluride, 976 P.2d 303, 306 (Colo.App.1998), aff'd, 3 P.3d 30 (Colo.2000).

■ As discussed, the actions taken by a city in determining whether to allow the alteration, removal, or demolition of buildings in an historic district are quasi-judicial in nature. See City & County of Denver v. Eggert, supra.

Here, as part of its Historic Preservation Code, the City incorporated a detailed and elaborate quasi-judicial mechanism and set of procedures that must be followed when determining whether to allow alteration, removal, or demolition of buildings in an historic district. See § 10–13–1, et seq.; § 1–3–1, et seq. (quasi-judicial hearings).

For example, any construction, alteration, removal, or demolition of an historic building or designated feature requires a landmark alteration certificate. Section 10–13–12. The City Manager and two designated members of the LPAB must review all applications for alterations in accordance with specific standards. See § 10–13–14(1) (a certificate is issued where there is no "significant impact or potential detriment"); § 10–13–18 (standards for landmark alteration certificate applications). The LPAB must hold a quasi-judicial public hearing on any application for new construction, removal, or demolition, pursuant to procedures prescribed in § 1–3–1, et seq. See § 10–13–14(b); § 10–13–15(a), (b); § 1–3 (provides "a uniform, consistent, and expeditious method for conducting quasi-judicial hear-

ings held by ... the city council and to afford persons due process of law"). The LPAB is charged with determining whether an application meets certain standards for historic preservation and is prohibited from approving an application that fails to meet those standards. *See* § 10–13–15(b), (c); § 10–13–18 (describing standards for issuance of landmark alteration certificates). If the City Council calls up a decision of the LPAB, it too must conduct a quasi-judicial public hearing pursuant to § 1–3–1, et seq. Section 10–13–16(b). Further, § 10–13–22 provides procedures for enforcement of the Historic Preservation Code and penalties for its violation.

■ We conclude that Section 8 of Ordinance 7038 is invalid because it allows the City to enter into privately negotiated contracts with individual property owners and bypass all the procedural due process and substantive requirements of the Code for the specific District. It allows for no quasi-judicial proceedings whatsoever with respect to alteration, removal, or demolition and does not require that the alteration or demolition meet the specific standards outlined in § 10–13–18. *See Landmark Land Co. v. City & County of Denver, supra; McArthur v. Zabka, supra,* 177 Colo. at 345, 494 P.2d at 93 ("[T]he Council, in the exercise of its police power, must afford procedural due process as it has been delineated in its zoning code."); *Tepley v. Pub. Employees Ret. Ass'n, supra.*

Moreover, the City's arguments to the contrary notwithstanding, although the City Council has the ability to amend or repeal the Historic Preservation Code, *see McArthur v. Zabka, supra* (city council has power to change its zoning amendment procedure), here, the City Council did not adopt an amendment to the Code itself. Rather, the City Council adopted an ordinance which authorized the City to exempt landowners within this specific district from the due process and substantive requirements of the Code by means of privately negotiated agreements. *See Landmark Land Co. v. City & County of Denver, supra.*

NARF has argued that Section 8 and the MOA constitute illegal contract zoning which violates its constitutional substantive due process rights. Although we need not reach the issue whether the MOA constitutes illegal contract zoning, the same concerns that render contract zoning suspect are present here. By creating specific contracts with selected individual property owners pursuant to Section 8, the City deprives other affected property owners in the District of due process and renders the procedural requirements of the Historic Preservation Code superfluous. *See King's Mill Homeowners Ass'n v. City of Westminster,* 192 Colo. 305, 557 P.2d 1186 (1976); *Ford Leasing Dev. Co. v. Bd. of County Comm'rs,* 186 Colo. 418, 528 P.2d 237 (1974); *Prock v. Town of Danville,* 655 N.E.2d 553, 560 (Ind.Ct.App.1995)("if a municipality could legislate by contract then each citizen would be governed by an individual rule based upon the best deal he could make with the municipality")(citing *Hartnett v. Austin,* 93 So.2d 86, 89 (Fla.1956)).

The issue then arises whether the invalid Section 8 is severable from the remaining provisions of Ordinance 7038 or whether the entire ordinance must be declared invalid.

■ As a general rule, if a statute or ordinance is invalid in one part and valid in another, the valid provision may be severed and sustained. Whether an invalid provision is severable from an otherwise sound law depends on two factors: (1) the autonomy of the portions remaining after the defective provision has been deleted, and (2) the intent of the enacting legislative body. *Robertson v. City & County of Denver,* 874 P.2d 325 (Colo.1994).

■ Here, the remaining portions of Ordinance 7038, on their face, retain their full force and effect and are autonomous. However, there is ample evidence in the record to support the conclusion that the City would not have passed Ordinance 7038 without the inclusion of Section 8, because, in passing Ordinance 7038, the City was trying to protect the Grandview Terrace historic area while avoiding litigation against the University over the issue of the University's sovereign immunity. The record contains a number of statements by City officials that Section 8 was included to provide the City with an alternative to litigation against the

**290**

University. Moreover, the City did not include a severability provision in Section 8 or anywhere else in Ordinance 7038. *See Robertson v. City & County of Denver, supra* (unconstitutional provision severable where there is no evidence that city would not have passed ordinance had it known section was unconstitutional and where code declared provisions severable). Under these circumstances, we conclude that severing Section 8 from the rest of Ordinance 7038 is not warranted and that the entire ordinance is, therefore, invalid.

### B. Ordinance 7103

We also conclude that Ordinance 7103 is invalid.

■ The sole purpose of Ordinance 7103 was to adopt and approve the MOA that was negotiated pursuant to Section 8 of Ordinance 7038. Accordingly, in reaching an agreement with the University on the treatment of the University's buildings within the District, the City did not abide by any of the procedural requirements in the Code, nor did it hold itself to the substantive standards that should have been considered before allowing alterations and demolitions by the University in the District. The City's actions in passing Ordinance 7103 deprived NARF and other private property owners of the due process protections provided by the Code. *See McArthur v. Zabka, supra; Russell v. City of Central,* 892 P.2d 432 (Colo.App.1995)(zoning ordinance amendment invalid where board did not enact it in accordance with procedures established by the ordinance itself). Indeed, the very process by which the MOA was negotiated and Ordinance 7103 was passed illustrates the due process deficiencies in Section 8 of Ordinance 7038.

■ Finally, we disagree with the City that it substantially complied with the procedural requirements of its Historic Preservation Code because NARF had an opportunity to be heard after the MOA was created but before passage of Ordinance 7103. NARF representatives spoke at the City Council meeting and objected to the MOA and proposed Ordinance 7103. However, that meeting was not a quasi-judicial hearing and was only held after the City had concluded the negotiations with the University and had come to an agreement already acceptable to the City. *See Prock v. Town of Danville, supra,* 655 N.E.2d at 560 ("By making a promise to zone before a zoning hearing occurs, a municipality denigrates the statutory process because it purports to commit itself to certain action before listening to the public's comments on that action.") (quoting *Dacy v. Village of Ruidoso,* 114 N.M. 699, 845 P.2d 793, 797 (1992)). Accordingly, NARF was not afforded any meaningful input on the substance or wisdom of that agreement and its lack of compliance with the Historic Preservation Code.

Because we have concluded that Ordinances 7038 and 7103 are invalid, the district court's order is accordingly reversed.

Judge CASEBOLT and Judge GRAHAM concur.