HELLAS CONSTRUCTION, INC., a foreign corporation, Plaintiff–Appellant,

v.

RIO BLANCO COUNTY, Colorado, Defendant–Appellee.

No. 07CA1114.

Colorado Court of Appeals, Div. IV.

July 10, 2008.

David A. Sprecace, P.C., David A. Sprecace, Elizabeth C. Lewis, Denver, Colorado, for Plaintiff–Appellant.

Kent A. Borchard, Meeker, Colorado, for Defendant–Appellee.

Opinion by Judge LOEB.

In this C.R.C.P. 106(a)(4) proceeding, plaintiff, Hellas Construction, Inc., appeals from a district court judgment upholding the determination by defendant, Rio Blanco County, that Hellas violated the special mobile machinery ownership tax provision set forth in section 42–3–107(17)(e)(II), C.R.S. 2007, and the County's imposition of administrative penalties under that statute. We reverse and remand with directions.

## I. Background

In May 2006, Hellas was working on the Elk Creek construction project in Rio Blanco County, Colorado. In connection with the project, Hellas leased nine pieces of heavy equipment from the John Deere Company. The parties agree that the leased equipment is "special mobile machinery," as that term is defined in section 42–3–107(17)(a)(III), C.R.S.2007. According to Hellas, John Deere delivered the equipment to the site from outside of Colorado.

On May 17, 2006, Deputy Mazzola of the Rio Blanco County Sheriff's Department inspected the equipment at the construction site. He determined that nine pieces of equipment lacked the required proof that the special mobile machinery tax had been paid for each piece of equipment. He also determined, on behalf of the County, that Hellas had violated section 42–3–107(17)(e)(II) by operating the machinery in Colorado without having paid the specific ownership tax.

That same day, for each piece of machinery lacking proof that the tax had been paid, Deputy Mazzola issued a "Notice of Determination and Information about Specific Ownership" (Notice of Determination). Each Notice of Determination stated that Rio Blanco County has determined that (1) the recipient of the notice appears to be the owner of the property; (2) "the property is within the definitions of mobile machinery and/or self-propelled construction equipment"; (3) the property lacked a registration tag; (4) the purported owner-lessor of the property is Hellas; (5) it appears the machinery is not exempt from taxation under section 42–3–104, C.R.S.2007; and (6) "[n]o application for prorated specific ownership tax has been filed with the Colorado Department of Revenue."

Each Notice of Determination concluded with the following:

Based on the forgoing, it appears that the special mobile machinery or self-propelled equipment described above should have been registered within the State of Colorado; that the same was not registered; that specific ownership tax is due and unpaid; and that the administrative penalty allowed by C.R.S. § 42–3–107(17)(e)(II) shall be applied.

Therefore: The owner of said . . . property is hereby ORDERED to cease and desist operation of such . . . machinery. . . . The administrative penalty provided by C.R.S. § 42–3–107(17)(e)(I[I] ) is hereby determined to apply. . . .

Issued along with each Notice of Determination was a Notice of Levy of Administrative Penalty directing Hellas when and where to pay the penalty for each piece of equipment.

Hellas was able to provide proof that one of the cited pieces of equipment had been registered and the appropriate tax paid, and the County cancelled the assessment of the tax and penalty for that piece of equipment. But, according to Hellas, it was not given the opportunity to dispute any other conclusions made by the County, including its conclusion that each piece of the cited equipment had been operated in Colorado. On May 18, 2007, Hellas paid the County $26,357 for the tax assessed on eight pieces of equipment and $52,235 for the administrative penalties.

Hellas subsequently requested from the Rio Blanco County Clerk and Recorder a refund of the $52,235 in penalties, and a hearing to contest the penalties. The County never responded to that request. Hellas then sought judicial review of the penalties pursuant to section 42–3–107(17)(e)(II) and C.R.C.P. 106(a)(4) by filing this action in district court.

The record before the district court consisted of the deputy's investigation file, basic identifying information on each of the cited pieces of equipment, and proof of the tax paid on one piece of equipment. On January 19, 2007, Hellas moved the district court to correct the record to include facts it would have presented had the County provided any type of hearing. The court denied the motion on March 7, 2007.

In its opening brief in the district court, Hellas asserted two basic contentions. It contended that the County's actions were arbitrary and capricious, and thus constituted an abuse of discretion. It also contended the County violated its right to due process by failing to provide notice and a hearing before imposing the penalties.

The court rejected Hellas' contentions in a written order on May 8, 2007. In the order, the court emphasized that it was "limited to the record compiled by the County and Deputy Mazzola" and noted that "Hellas has not had an opportunity to present any evidence on its own behalf. . . ."

Characterizing Hellas' contention that the County violated its right to due process as a constitutional challenge to section 42–3–107(17)(e)(II), the court concluded that Hellas' right to due process was not violated on two grounds. First, the court reasoned that, because section 42–3–107(17)(e)(II) does not require notice or a hearing, the County's actions pursuant to that section did not constitute quasi-judicial action under *Gilpin County Board of Equalization v. Russell,* 941 P.2d 257, 262 (Colo.1997)(describing characteristics of quasi-judicial action). The court then concluded that, because the County's actions were not quasi-judicial, procedural due process did not require that the County provide notice and a hearing under *Douglas County Board of Commissioners v. Public Utilities Commission,* 829 P.2d 1303, 1310 (Colo.1992).

Second, the court concluded that "the taxation scheme set forth in § 42–3–107 is ministerial in nature rather than quasi-judicial. . . . Since enforcement of the act and the penalty assessment is ministerial and not quasi-judicial, due process does not require that notice be given . . . or that Hellas be afforded a hearing."

The court also rejected Hellas' contention that the County, through the actions of Deputy Mazzola, abused its discretion. The court relied solely on the statements in each Notice and Determination, and concluded that these statements constituted competent evidence sufficient to support the County's determination that Hellas violated section 42–3–107(17)(e)(II). This appeal followed.

## II. C.R.C.P. 106(a)(4) Review

Hellas contends the district court erred in upholding the County's determination that it violated section 42–3–107(17)(e)(II). It specifically contends that the County's determination made under that section constitutes a quasi-judicial action and that the County abused its discretion in making its determination. We agree.

## A. Standard of Review

■ The determination whether section 42–3–107(17)(e)(II) has been violated is subject to judicial review pursuant to C.R.C.P. 106(a)(4). § 42–3–107(17)(e)(II). By its terms, review under C.R.C.P. 106(a)(4) is appropriate where any governmental body or officer has exercised "judicial or quasi-judicial functions." *Native American Rights Fund, Inc. v. City of Boulder,* 97 P.3d 283, 287 (Colo.App.2004). Such review is limited to review of the record to determine whether the governmental tribunal has abused its discretion or exceeded its jurisdiction. *Widder v. Durango Sch. Dist. No. 9–R,* 85 P.3d 518, 526 (Colo.2004).

Because Hellas contends only that the County abused its discretion, we first address whether the County's action was quasi-judicial, and the County even exercised discretion, or whether, as the district court held, the County's action was ministerial and devoid of discretion. We conclude the County's action was quasi-judicial.

## B. Quasi–Judicial Action

■ An action is quasi-judicial when it involves the determination of rights, duties, or obligations so as to adversely affect the protected interests of specific individuals, and it is reached by application of preexisting legal standards or policy considerations to past or present facts to resolve the particular interests in question. *Native American Rights Fund,* 97 P.3d at 287; *Prairie Dog Advocates v. City of Lakewood,* 20 P.3d 1203, 1207 (Colo.App.2000)("[t]here is no 'litmus test' for whether a particular action is quasi-judicial"); *see Gilpin County,* 941 P.2d at 262 n. 11. In contrast, a ministerial act is devoid of any meaningful official discretion. *Prairie Dog,* 20 P.3d at 1209 (action performed to carry out prior administrative decision is ministerial).

Here, the district court concluded that a county's determination that section 42–3–107(17)(e)(II) has been violated, and the levy of the administrative penalty under that section, constitute ministerial actions. The County's contention that Hellas was not entitled to present evidence or an opportunity to be heard is premised on its argument that,

because the County did not exercise any discretion in imposing the penalty, its actions were ministerial. We disagree with the County's contention, and the district court's conclusion, that the County's actions under section 42–3–107(17)(e)(II) were purely ministerial.

To analyze the nature of the County's actions under section 42–3–107(17)(e)(II), we look first to the tax scheme concerning special mobile machinery as set forth in sections 42–3–101 to –126, C.R.S.2007. Section 42–3–106(1), C.R.S.2007, imposes an annual specific ownership tax on each item of classified personal property, including mobile machinery. *See* § 42–3–106(2)(e) (classifying certain mobile machinery as "Class F personal property"). Special mobile machinery is a subset of Class F personal property. *See* § 42–3–107(17)(a)(III).

Under section 42–3–107(15), the Colorado property tax administrator compiles a schedule of taxable values for each item of Class F personal property and determines the taxable value of each piece of machinery using either the manufacturer's suggested retail price, the original retail delivered price to the customer, or a nationally recognized standard or reference. § 42–3–107(15)(c). The annual specific ownership tax is then computed by an authorized collection agent in accordance with a schedule providing annual downward graduations set forth in section 42–3–107(15)(e). The schedule of taxable values promulgated by the tax administrator under section 42–3–107(15) must be furnished to each agent authorized to collect the tax, and must be uniformly used by every authorized agent in computing the amount of tax payable on Class F personal property. § 42–3–107(18)(c). Thus, any discretion involved in deriving the amount of annual specific tax payable on a certain item of machinery is exercised solely by the property tax administrator.

Here, Deputy Mazzola, apparently an authorized agent of the County, assessed the annual specific ownership tax payable on the equipment leased by Hellas, which totaled $26,357. Hellas paid the tax and does not contend on appeal that the County wrongful-

ly assessed the tax. Rather, Hellas contends the County abused its discretion by imposing the administrative penalty under section 42–3–107(17)(e)(II).

In pertinent part, section 42–3–107(17)(e)(II) provides:

No owner may operate special mobile machinery in Colorado unless the owner has paid the specific ownership tax assessed pursuant to this article.... A person who violates the provisions of this subparagraph (II) shall be subject to, in addition to any other applicable penalty, an administrative penalty of five hundred dollars or double the amount of the specific ownership tax, whichever is greater. Such penalty may be levied by a peace officer.... Such violation shall be determined by, paid to, and retained by the municipality or county in which such motor vehicle is or should have been registered, subject to judicial review pursuant to rule 106(a)(4) of the Colorado rules of civil procedure.

Section 42–3–107(17)(e)(II) thus requires a municipality or county to determine whether an "owner" has "operate[d] special mobile machinery in Colorado" and has not "paid the specific ownership tax" to determine whether a person has violated that subsection. Once a municipality or county has determined a violation has occurred, the subsection requires it to impose an administrative penalty in a certain amount.

The act of determining what constitutes an "owner," and what act or actions constitute "operate ... in Colorado" within the meaning of section 42–3–107(17)(e)(II), requires a legal analysis of those terms to derive an applicable legal standard, in addition to factual findings and an application of the factual findings to the derived legal standard. Thus, to determine a violation, a county must initially determine what constitutes an "owner." Under section 42–3–107(17)(e)(II), an "owner" includes persons that fall within the definition of section 42–1–102(66), C.R.S.2007, which includes, among others, "parties otherwise having lawful use or control ... [of] a vehicle." Under section 42–3–107(17)(e)(II), an "owner" includes "any person authorized to act on the owner's behalf." See § 42–3–107(17)(a)(I). The county must then make a

factual determination of who it believes operated the machinery. If the person or entity using the equipment does not hold legal title to the vehicle, the county must make factual findings and legal conclusions as to issues of control and authority before imposing the penalty on a person or entity other than the person physically using the machine.

The county must also make a legal determination as to what act or actions constitute the term "operate." For example, as used in section 42–3–107(17)(e)(II), the term "operate" could be narrowly construed to mean only the act of using the machine for its specialized purpose, such as using an excavator to dig holes. The term could also be more broadly construed to include the more general act of driving the machine. After making this legal determination, the county must then make a factual determination regarding the use of a particular piece of equipment, and finally apply those facts to its legal standard of "operate."

In contrast to the act of assessing the annual specific ownership tax, or the act of imposing the administrative penalty after a violation has been determined, the act of determining a violation of section 42–3–107(17)(e)(II) requires a county to exercise multiple layers of discretion involving several independent legal and factual issues.

We disagree with the County's contention, and the district court's conclusion, that the act of determining a violation of section 42–3–107(17)(e)(II) cannot be quasi-judicial under *Gilpin County*. In *Gilpin County*, the supreme court distinguished quasi-judicial action from quasi-legislative action. *Gilpin County*, 941 P.2d at 262. The court stated that "[q]uasi-judicial action is characterized by the following factors: (1) a local or state law requiring that notice be given before the action is taken; (2) a local or state law requiring a hearing before the action is taken; and (3) a local or state law directing that the action results from the application of prescribed criteria to the individual facts of a case." *Id.* (citing *Hadley v. Moffat County Sch. Dist. RE–1*, 681 P.2d 938, 945 n. 3 (Colo.1984)). The County contends, and the district court concluded, that because no local or state law requires a hearing before a

county may determine a violation under section 42–3–107(17)(e)(II), the act cannot be quasi-judicial.

In our view, the County's reliance on *Gilpin* is misplaced because the factors relied on in that case merely characterized the nature of quasi-judicial action, but did not define quasi-judicial action in terms of necessary elements. *See Widder*, 85 P.3d at 527. Indeed, the court in *Widder* made clear that the factors cited in *Gilpin*, which were originally formulated in *Snyder v. City of Lakewood*, 189 Colo. 421, 425, 542 P.2d 371, 374 (1975), *overruled in part by Margolis v. Dist. Court*, 638 P.2d 297 (Colo.1981), support a finding of quasi-judicial action, but are not, however, necessary for such a finding. *See Widder*, 85 P.3d at 527.

The County's misplaced reliance on *Gilpin* is evident when it is considered in the context of the additional contention that due process does not require a hearing before the administrative penalty in section 42–3–107(17)(e)(II) is imposed because such an action is not quasi-judicial. By asserting that (1) an action is not quasi-judicial where no state or local law requires notice and a hearing; and (2) if an action is not quasi-judicial, due process does not require notice or a hearing, the County is essentially making the anomalous argument that where no state or local law requires a hearing before an action is taken, due process does not require notice or a hearing before the action is taken.

■ Contrary to the County's argument, the right to procedural due process, which includes the right to a hearing before a penal sanction is imposed, is constitutionally derived and is not dependent on state or local laws. *See, e.g., Raymond Lloyd Co. v. Dist. Court*, 732 P.2d 612, 615 (Colo.1987) (local rule imposing penal sanction without providing any opportunity to be heard violates procedural due process). Thus, an action may be quasi-judicial even though no state or local law requires a hearing before the action is taken.

■ Accordingly, while a state or local law requiring a hearing before action is taken supports a finding that the action is quasi-judicial, *see Hadley*, 681 P.2d at 945 n. 3, the absence of such a state or local law is not dispositive of the issue whether the action is quasi-judicial in nature. *See Widder*, 85 P.3d at 527.

Also, to the extent that the County contends that the act of determining a violation under section 42–3–107(17)(e)(II) is ministerial because Hellas obviously violated that subsection, we disagree. Obvious facts may indeed narrow the discretion inherent in a quasi-judicial action. However, such facts do not eliminate the need to exercise discretion when making a legal determination. Indeed, under C.R.C.P. 106(a)(4), a governmental body may abuse its discretion if it misinterprets or misapplies the law. *Widder*, 85 P.3d at 526–27.

In our view, the act of determining a violation of section 42–3–107(17)(e)(II) involves the determination of duties and obligations of a purported special mobile machinery owner, and is reached by application of several legal standards, such as the legal definition of "owner" and "operate," to a specific set of facts, to ultimately resolve the particular interests in question. Accordingly, we conclude the act of determining a section 42–3–107(17)(e)(II) violation is quasi-judicial in nature. *See Native American Rights Fund*, 97 P.3d at 287; *Prairie Dog*, 20 P.3d at 1208.

### C. Abuse of Discretion

■ We now turn our analysis to whether the County abused its discretion by determining that Hellas violated section 42–3–107(17)(e)(II). Because we conclude the record lacks competent evidence reasonably supporting necessary elements of the County's ultimate determination, we agree with Hellas that the County abused its discretion.

■ Because Hellas does not contend the County exceeded its jurisdiction, our review under C.R.C.P. 106(a)(4) is limited here to whether the County's action was an abuse of discretion, based on the evidence in the record before it. *See* C.R.C.P. 106(a)(4)(I); *Alward v. Golder*, 148 P.3d 424, 428 (Colo. App.2006). An agency abuses its discretion when its decision is not reasonably supported by any competent evidence in the record.

*Widder,* 85 P.3d at 526. A record lacks competent evidence where the ultimate decision of the agency "is so devoid of evidentiary support that it can only be explained as an arbitrary and capricious exercise of authority." *Id.* at 526–27. Also, a governmental body may abuse its discretion if it misinterprets or misapplies the law. *Id.*

An appellate court sits in the same position as the district court when reviewing an agency's decision under C.R.C.P. 106(a)(4). *Alward,* 148 P.3d at 428. We thus review the issues presented to the district court de novo. *City of Colorado Springs v. Givan,* 897 P.2d 753, 756 (Colo.1995); *Leichliter v. State Liquor Licensing Auth.,* 9 P.3d 1153, 1155 (Colo.App.2000).

Here, we conclude the record lacks a factual basis for the County's determination that Hellas operated or owned the equipment for which the County imposed the administrative penalty under section 42–3–107(17)(e)(II). First, as to whether Hellas "operated" the equipment within the meaning of that section, the only evidence in the record that would support a finding that any equipment had been operated is Deputy Mazzola's statement in his offense report that, upon arrival at the construction site, he "saw a lot of heavy equipment in use moving dirt." Nothing in the record, however, indicates how each specific piece of equipment cited by the County was being used, or that the specific pieces of equipment were even included in the deputy's general description of "a lot of heavy equipment."

Contrary to the district court's conclusion, the deputy's statement in each Notice and Determination that Hellas "appears to be the owner of the Property by ... Operation of equipment," as it pertains to the issue of operation, is a legal conclusion that the equipment was operated, rather than factual evidence that would support such a conclusion.

In short, the record is devoid of any specific evidence pertaining to the operation of any of the individual pieces of equipment cited by the County. Thus, looking solely to the record as provided by the County, we cannot explain the County's determination that Hellas "operated" each specific piece of equip-

ment as anything but an arbitrary and capricious exercise of authority. *See Widder,* 85 P.3d at 526–27.

The record is similarly devoid of any evidence supporting the County's determination that Hellas was an "owner" of each specific piece of equipment within the meaning of section 42–3–107(17)(e)(II). In support of his conclusion that Hellas was the owner of each piece of equipment, Deputy Mazzola stated in each Notice and Determination that the signage on the equipment indicated that the equipment belonged to Hellas. However, there was no evidence regarding the nature of the signage. Moreover, nothing in the record shows the nature of the relationship between Hellas and the person allegedly operating the equipment that would support a conclusion that Hellas was an "owner" of the equipment within the meaning of section 42–3–107(17)(e)(II). Thus, even if the record showed what the signage displayed, there is no evidence in the record that would support a conclusion that the person using the equipment possessed title to the equipment, or was authorized by, or under the control of, Hellas.

Because the record lacks competent evidence showing that Hellas owned or operated special mobile machinery in Colorado, we conclude the County's ultimate determination that Hellas violated section 42–3–107(17)(e)(II) is not reasonably supported by competent evidence, and was thus an abuse of discretion. *See Widder,* 85 P.3d at 526.

■ We also note that the record fails to provide the legal standards used by the County in making its determination that Hellas violated section 42–3–107(17)(e)(II). For example, the record does not reflect the County's interpretation of the words "operate" or "owner," as those terms are used in section 42–3–107(17)(e)(II). Even if the County did, in fact, apply preexisting legal standards sufficient to prevent arbitrary and capricious enforcement, our review here is limited to the record. The absence of any indication as to what legal standards were applied renders the County's ultimate determination explainable only as an arbitrary and capricious exercise of authority.

**508**

### III. Remaining Contentions

Because we have concluded that, on the record before us, the County abused its discretion by imposing penalties based on its determination that Hellas violated section 42–3–107(17)(e)(II), we need not address Hellas' remaining contentions regarding due process and the district court's ruling on its motion to correct the record.

The judgment is reversed, and the case is remanded to the district court. On remand, the district court is directed to enter judgment vacating the County's imposition of the penalties and to remand to the County with instructions to refund the penalties.

Judge ROY and Judge CARPARELLI, concur.