The summaries of the Colorado Court of Appeals published opinions
constitute no part of the opinion of the division but have been prepared by
the division for the convenience of the reader.  The summaries may not be
cited or relied upon as they are not the official language of the division.
Any discrepancy between the language in the summary and in the opinion
should be resolved in favor of the language in the opinion.

SUMMARY
February 20, 2020

## 2020COA32

**No. 18CA2118,** *In Re Interest of Howard* **— Probate — Colorado
Uniform Guardianship and Protective Proceedings Act —
Fiduciary Oversight, Removal, Sanctions, and Contempt —
Nonemergency Situations**

As a matter of first impression, a division of the court of
appeals considers whether the probate court must hold a hearing
when an interested party files a petition to remove or modify the
authority of a guardian under § 15-10-503(2) C.R.S. 2019.  The
division concludes that the statute's plain language requires a
hearing under these circumstances.  Accordingly, the division
reverses the order and remands the case for a hearing.

Court of Appeals No. 18CA2118
Jefferson County District Court No. 17PR31056
Honorable Joel Bray Schaefer, Magistrate

In re the Interest of Jean R. Howard, protected person.

Amster K. Howard,

Petitioner-Appellant,

v.

Stephanie Conrady Christianson,

Respondent-Appellee.

ORDER REVERSED AND CASE
REMANDED WITH DIRECTIONS

Division VI
Opinion by JUDGE FREYRE
Richman and Grove, JJ., concur

Announced February 20, 2020

Michael Graetz Law, LLC, Michael V. Graetz, Denver, Colorado for Jean R. Howard

Young Zen, LLC, Gayle Young, Littleton, Colorado for Guardian Ad Litem

The Moore Law Firm, P.C., Teresa M. Moore, Englewood, Colorado, for Petitioner-Appellant

Rumler Tarbox Lyden Law Corporation, P.C., Cyndi L. Lyden, Jennifer M. Lyman, Denver, Colorado, for Respondent-Appellee

Frazer-Abel Law, LLC, Virginia Frazer-Abel Denver, Colorado for Conservator

¶ 1   In this adult guardianship case, Amster K. Howard appeals the probate court's order summarily denying his petition to remove or modify the authority of Stephanie Conrady Christianson (guardian), the legal guardian of his wife, Jean R. Howard (ward). As a matter of first impression, we consider whether section 15-10-503(2), C.R.S. 2019 requires the court to hold a hearing before ruling on a petition filed by an interested person to remove or modify the authority of a guardian in a nonemergency situation. We conclude that it does. Therefore, we reverse the court's order denying the petition and remand the case for further proceedings.

## I.   Factual Background

¶ 2   The ward suffers from dementia. Several years ago, the ward was administered a feeding tube after experiencing severe pain associated with trigeminal neuralgia that made swallowing difficult. These conditions required constant care, which Mr. Howard provided at home, with the assistance of professional caregivers, from 2015 to the late summer of 2018.

¶ 3   During the summer and fall of 2017, family differences emerged between Mr. Howard and the ward's daughter and sister concerning the ward's care. Eventually, the daughter and sister

1

filed a joint petition to serve as the ward's legal co-guardians, and the ward's sister separately petitioned for appointment as the ward's conservator to manage the ward's property. After a contentious two-day hearing, the probate court appointed a neutral third-party guardian, Ms. Christianson, and a neutral conservator on June 1, 2018.

¶ 4 Shortly thereafter, conflicts arose between the guardian and Mr. Howard over his care of the ward. In particular, the guardian believed the ward should be transitioned off the feeding tube. She instructed Mr. Howard and the ward's daughter on how to suspend tube feedings and track the ward's nutritional intake in a log. However, according to the guardian, Mr. Howard did not follow these instructions after suspending tube feeding and the ward lost weight. Concerned about the ward's well-being, the guardian moved her from Mr. Howard's home to a skilled nursing facility over Mr. Howard's objections. The guardian, guardian ad litem, and ward's counsel believed the ward's condition improved after this move.

¶ 5 Unsurprisingly, Mr. Howard disagreed. He filed a petition to remove the guardian or modify her authority. His petition

challenged the guardian's assertions about his care of the ward and willingness to follow the guardian's instructions. He separately objected to her initial report and its findings. In her pro se response to the petition, the guardian expressed concerns that Mr. Howard had not followed her instructions, said she was worried about the ward's condition, and argued that she moved the ward to a skilled nursing facility believing it was in the ward's best interest. The guardian ad litem and ward's counsel also opposed the petition, but they did not attach any affidavits or other sworn evidentiary submissions to any of the responses opposing the petition.

¶ 6      The probate court denied the petition in a written order stating,

> [The court] has reviewed all responses along with the Petition for removal or modification to the Guardian's authority. Court finds Petition wholly without merit and it is DENIED.

## II. Section 15-10-503(2) Requires a Hearing on an Interested Person's Request for Removal or Modification of a Guardian's Authority

¶ 7      Mr. Howard contends that the court violated section 15-10-503(2) by summarily denying his petition to remove the guardian or modify her authority without a hearing. We agree because the

3

statute's plain language requires a hearing to determine whether removal or modification of the powers of a guardian is warranted. Therefore, we reverse the court's order denying the petition to remove or modify, and we remand the case for further proceedings.

### A. Standard of Review and Applicable Law

¶ 8 Whether the probate court properly interpreted and applied the relevant statute is a legal question that we review de novo. *Arguello v. Balsick*, 2019 COA 20M, ¶ 14. When interpreting a statute, we give statutory words and phrases their plain and ordinary meanings consistent with the legislature's intent. *Id.*; *accord Vigil v. Franklin*, 103 P.3d 322, 327 (Colo. 2004). "If a statute is clear and unambiguous on its face, then we need not look beyond the plain language." *Vigil*, 103 P.3d at 327. We will also endeavor to "give effect to every word and render none superfluous." *Lombard v. Colo. Outdoor Educ. Ctr., Inc.*, 187 P.3d 565, 571 (Colo. 2008).

### B. Court's Oversight of a Guardian

¶ 9 The Colorado Uniform Guardianship and Protective Proceedings Act is based on the Uniform Guardianship and Protective Proceedings Act of 1997 (UGPPA) and became effective

January 1, 2001. Ch. 368, sec. 1, §§ 15-14-101 to -433, 2000 Colo. Sess. Laws 1778-1832. The purpose and focus of the UGPPA is to strengthen the due process rights of incapacitated persons. *See* Unif. Guardianship & Protective Proceedings Act prefatory note; *Arguello*, ¶ 24. To that end, the UGPPA expands the procedural requirements for appointing guardians. *Arguello*, ¶26. It also establishes a higher burden of proof for restricting a protected person's rights than for restoring those rights. *See* Unif. Guardianship & Protective Proceedings Act prefatory note ("The burden of proof in establishing a guardianship or conservatorship is clear and convincing evidence, while the burden of proof for terminating a guardianship or conservatorship is prima facie evidence.") (citation omitted). And it recognizes that "[m]onitoring of guardianships and conservatorships is critical" and required courts to establish a monitoring system. *Id.*

¶ 10    As relevant here, a person interested in a ward's welfare may petition the court to "modify the type of appointment or powers granted to the guardian." § 15-14-318(2), C.R.S. 2019. As originally enacted in 2000, this language largely mirrored the language of the UGPPA, with one major difference. Ch. 368, sec. 1,

§ 15-14-318, 2000 Colo. Sess. Laws 1801. Unlike the UGPPA, section 15-14-318 also included a fourth subsection. Subsection (4) authorized the court to "remove a guardian or permit a guardian to resign as set forth in section 15-14-112." 2000 Colo. Sess. Laws at 1802.

¶ 11    Section 15-14-112, C.R.S. 2000, in turn, also mirrored the language of the UGPPA. It provided that a "ward, protected person, or person interested in the welfare of a ward or protected person may petition for removal of a guardian . . . on the ground that removal would be in the best interest of the ward . . . or for other good cause." Ch. 368, sec. 1, § 15-14-112(2), 2000 Colo. Sess. Laws 1782.

¶ 12    In 2008, the General Assembly enacted new provisions and amendments concerning judicial oversight of fiduciaries. *See* Ch. 149, sec. 1, §§ 15-10-501 to -505, 2008 Colo. Sess. Laws 477-81. It amended section 15-14-318(4) to allow the court to *remove* a guardian pursuant to a new section, section 15-10-503.[1] Ch. 149, sec. 11, § 15-14-318(4), 2008 Colo. Sess. Laws 484. The 2008

---

[1] The language permitting a guardian to resign pursuant to section 15-14-112(2), C.R.S. 2019, remained unchanged.

amendments also modified section 15-14-112(2) to require that "a petition for removal of a guardian or conservator shall be governed by the provisions of section 15-10-503" and moved the language authorizing the ward or interested persons to petition for a guardian's removal to that section. Ch. 149, sec. 9, § 15-14-112(2), 2008 Colo. Sess. Laws 484. Thus, section 15-10-503 now governs a guardian's removal. Ch. 149, sec. 11, § 15-14-318(4), 2008 Colo. Sess. Laws 484.

¶ 13    Section 15-10-503[2] concerns the power of a court to address a guardian's conduct in emergency and nonemergency situations. Although the General Assembly modified this provision in 2016, it remains largely unchanged.[3] Section 15-10-503(1) authorizes the court to act in emergency situations without prior notice or a hearing. Section 15-10-503(2) authorizes a court to act in

---

[2] Although section 15-10-503, C.R.S. 2019, uses the terms "estates" and "fiduciaries," these terms are defined to include "guardianships" and "guardians" under section 15-10-501(2)(b) and (3), C.R.S. 2019.

[3] The 2016 amendments to section 15-10-503 further clarified the court's powers and what constituted cause for removal. Ch. 286, sec. 1, § 15-10-503, 2016 Colo. Sess. Laws 1163-64.

nonemergency situations, but only after notice and a hearing. Specifically, this nonemergency provision provides as follows:

> Upon petition by a person who appears to have an interest in [a guardianship], or upon the court's own motion, and after a hearing for which notice to the [guardian] has been provided pursuant to section 15-10-505, a court may order any one or more of the following . . .
>
> . . . .
>
> (c) Additional restrictions on the powers of the [guardian]. . . .
>
> . . . .
>
> (h) The removal of the [guardian].

§ 15-10-503(2).

¶ 14    Upon receiving notice of such a filing for his or her removal, the guardian must not act "except to account, to correct maladministration, or to preserve the [guardianship]." § 15-10-503(4).

¶ 15    The court may remove a guardian for cause at any time. § 15-10-503(3). Cause for removing a guardian exists when:

> (I)    Removal would be in the best interest of the [ward];
>
> (II)   It is shown that the [guardian] or the person seeking the [guardian's]

8

> appointment intentionally misrepresented material facts in the proceedings leading to the [guardian's] appointment; or

> (III) The [guardian] has disregarded an order of the court, has become incapable of discharging the duties of the office, or has mismanaged the [ward] or failed to perform any duty pertaining to the office.

§ 15-10-503(3)(c); *see also Black v. Black*, 2018 COA 7, ¶ 23.

### C.    Application

¶ 16    Applying the plain language of section 15-10-503, we conclude that the probate court erred by denying Mr. Howard's petition without a hearing.  First, no one disputes that Mr. Howard, as the ward's husband, is an interested party with standing to petition the court for orders concerning the guardian.  Next, the record contains no evidence of an emergency involving the ward that would make the emergency provision, section 15-10-503(1), applicable here. Therefore, section 15-10-503(2) governs Mr. Howard's petition.

¶ 17    As explained above, subsection (2) provides for court action over a guardian in a nonemergency situation only after notice and a hearing.  § 15-10-503(2).  The statutory command is clear — the probate court must conduct a hearing before exercising its discretionary authority to remove a guardian or modify the

9

guardian's powers. And we must apply that language as written to effectuate the General Assembly's intent. *See Colo. Office of Consumer Counsel v. Pub. Utils. Comm'n*, 42 P.3d 23, 27 (Colo. 2002) ("The task of the court in interpreting a statute is to determine and give effect to the intent of the legislature."). Moreover, our interpretation that a hearing is necessary is supported by the General Assembly's decision to add this hearing requirement, which is not part of the UGPPA, several years after adopting the UGPPA when it gave the court oversight over fiduciaries. *See Carrera v. People*, 2019 CO 83, ¶ 24 (noting that a "statute's history can 'inform[] our understanding of legislative intent'") (citation omitted).[4]

¶ 18    We reject the guardian's contention that section 15-10-503(4) permits the court to act without a hearing because it barred her from making decisions for or otherwise caring for the ward while the

---

[4] We express no opinion on whether the parties may waive notice and hearing when the facts are uncontested. *See* § 15-10-401, C.R.S. 2019 (setting forth the notice requirements for a fiduciary); § 15-10-402, C.R.S. 2019 (providing a fiduciary the right to waive notice); *see also Spohr v. Fremont Cty. Dep't of Human Servs.*, 2018 COA 74, ¶ 27 (looking to the probate code to determine whether the statute permits a party to waive a hearing).

petition was pending. To the contrary, subsection (4) bars a guardian from acting "except to account, to correct maladministration, or to preserve the [guardianship]," so the statute permits the guardian to preserve the ward's interests. § 15-10-503(4). The guardian does not explain, nor do we discern, how a hearing would interfere with the ward's care.

¶ 19 We are similarly unpersuaded that the statute requires a hearing only when removal is not granted, as this would defeat the purpose of holding a hearing. *See Frazier v. People*, 90 P.3d 807, 811 (Colo. 2004) ( "[a] statutory interpretation leading to an illogical or absurd result will not be followed" (citing *State v. Nieto*, 993 P.2d 493, 501 (Colo. 2000))). Nothing in the statute permits the court to enter orders based on the parties' offers of proof in the pleadings. Indeed, as this case illustrates, the allegations are often hotly contested and require further development and credibility findings. Only a hearing ensures that the ward's best interests will be protected. Moreover, the words "only after" do not appear in the statute, and "we may not read language into the statute that does not exist." *Arguello,* ¶ 31 (citing *Boulder Cty. Bd. of Comm'rs v. HealthSouth Corp.,* 246 P.3d 948, 954 (Colo. 2011)).

¶ 20    Finally, we are not persuaded that the court had discretion whether to set a hearing on a motion pursuant to C.R.C.P. 121, section 1-15.  Mr. Howard filed a petition (not a motion) as defined by section 15-10-201(40), C.R.S. 2019.  Mr. Howard's petition asked the probate court to exercise its oversight power to review the guardian's actions under section 15-10-503(1) and (2).  Accordingly, the guardian's reliance on C.R.C.P. 121 is misplaced.

¶ 21    In sum, because the probate court denied Mr. Howard's petition without the hearing required by section 15-10-503(2), we reverse the court's order and remand for further proceedings.  On remand, the probate court must conduct a hearing and enter findings as to whether the guardian's authority should be modified or whether the guardian should be removed consistent with the statute.

¶ 22    Because we reverse for a hearing, we need not address Mr. Howard's contention that the guardian failed to act in the ward's best interest.  *See Hellas Constr., Inc. v. Rio Blanco Cty.*, 192 P.3d 501, 508 (Colo. App. 2008).

### III. Conclusion

¶ 23    The court's order is reversed, and the case is remanded for a hearing pursuant to section 15-10-503(2).[5]

JUDGE RICHMAN and JUDGE GROVE concur.

---

[5] Because we reverse the court's order and remand for a hearing, we conclude that Mr. Howard's motion on appeal to strike portions of the guardian's brief is moot.