**Marian L. OLSON, Plaintiff–Appellant,**

**v.**

**CITY OF GOLDEN, City Council of the City of Golden, Golden Urban Renewal Authority, Defendants–Appellees.**

**No. 01CA0470.**

Colorado Court of Appeals,
Div. V.

Feb. 14, 2002.

Certiorari Denied Sept. 3, 2002.

Victor F. Boog & Associates, P.C., Victor F. Boog, Linda A. Battalora, Lakewood, Colorado, for Plaintiff–Appellant.

Windholz & Associates, James A. Windholz, Boulder, Colorado; Hall & Evans L.L.C., Josh A. Marks, Denver, Colorado, for Defendants–Appellees City of Golden and City Counsel of the City of Golden.

Paul C. Benedetti, Boulder, Colorado, for Defendant–Appellee Golden Urban Renewal Authority.

Opinion by Judge NIETO.

Plaintiff, Marian L. Olson, appeals a judgment dismissing her claims against defendants, City of Golden, City Council of Golden, Golden Urban Renewal Authority (GURA), and Clear Creek Square, LLC (Clear Creek). We affirm.

In 1989, the city approved the Golden Urban Renewal Plan (the plan). In 1995, as part of the plan, GURA purchased property in Golden within the plan area. GURA also entered into an agreement with the city. According to an amended version of this agreement, the city was to provide support to GURA, and GURA was to repay the city from future tax increments derived from the property and improvements on the property. In 1998, GURA entered into an agreement with a developer, under which the developer acquired the property and was to redevelop it according to GURA's development plan. The developer later assigned its interest under the agreement to Clear Creek.

In 2000, plaintiff brought an action against defendants seeking an injunction and a declaratory judgment that the agreements between the city and GURA and between GURA and Clear Creek violated the Urban Renewal Law, § 31–25–101, et seq., C.R.S. 2001, and article X, section 20 of the Colorado Constitution (TABOR).

Plaintiff also alleged in her amended complaint that defendants' agreements violated article XI, section 2 of the Colorado Constitution. However, plaintiff made no argument to the trial court based on this constitutional provision, and she has made none here. Arguments not presented to the trial court in connection with a summary judgment motion will not be considered on appeal. *Mohr v. Kelley*, 8 P.3d 543 (Colo.App. 2000). Therefore, we will not consider that aspect of the complaint.

Defendants filed motions for summary judgment. After a hearing, the trial court concluded that plaintiff lacked standing to bring an action pursuant to the Urban Renewal Law and that GURA is not subject to the provisions of TABOR. The court granted the motions for summary judgment and dismissed all of plaintiff's claims. Plaintiff now appeals that judgment.

## I.

Plaintiff contends that the trial court erred in concluding that she lacked standing to bring an action based on the Urban Renewal Law. Specifically, plaintiff argues that her status as a taxpayer provides her with standing to bring an action alleging that defendants failed to comply with § 31–25–106(1), C.R.S.2001, which provides that real property transferred as part of an urban renewal project "shall be sold, leased, or otherwise transferred at not less than its fair value (as determined by the authority)." We disagree.

■ An order granting summary judgment is reviewed de novo. Summary judgment is a drastic remedy and should be granted only when the pleadings, affidavits, depositions, or admissions establish that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Hyden v. Farmers Insurance Exchange,* 20 P.3d 1222 (Colo.App. 2000).

■ "A plaintiff has standing if he or she (1) incurred an injury-in-fact (2) to a legally protected interest, as contemplated by statutory or constitutional provisions." *Brotman v. East Lake Creek Ranch, L.L.P.,* 31 P.3d 886, 890 (Colo.2001); *see also Wimberly v. Ettenberg,* 194 Colo. 163, 570 P.2d 535 (1977). When considering standing, a court determines whether the plaintiff has asserted a legal basis upon which a claim for relief may be predicated. In doing so, a court must accept as true all allegations of material fact as presented in the complaint. *Board of Commissioners v. City of Broomfield,* 7 P.3d 1033 (Colo.App.1999).

In this action, plaintiff attempted to vindicate rights shared equally by all citizens and taxpayers in Golden. No injury or cognizable legal interest personal to plaintiff is apparent from the allegations challenging the actions of GURA. Here, plaintiff claims standing based solely on her status as a taxpayer. However, such standing is problematic.

Suits such as these highlight the tension between the judiciary's limited powers and its role as a check on the co-ordinate branches of government. They tempt the courts to overlook prudential limitations on standing, rooted in the separation of powers, in order to redress otherwise nonjusticiable wrongs.

*Dodge v. Department of Social Services,* 198 Colo. 379, 384, 600 P.2d 70, 73 (1979)(Dubofsky, J., specially concurring).

■ The judicial branch of government is prohibited from assuming the powers of another branch. Thus, the standing doctrine has constitutional significance. *See* Colo. Const. art. III; *Wimberly v. Ettenberg,* supra.

"[T]his power of judicial determination is delicate in character, one to be exercised with caution and care, for it may result in disapproval of acts of the legislative department or of actions of the executive department, both co-ordinate branches of government. This care, this caution has been proverbially observed by the courts, lest in their zeal to prevent what they deem unjust, they exceed their judicial authority, assert an unwarranted superiority over their co-ordinate governmental branches and invade the fields of policy preserved to the legislative arm or the realm of administrative discretion lodged in the executive branch. Obviously such determination may not be had at the suit of any and all members of the public or in an ex parte proceeding. It can be secured only at the suit of one directly and not remotely interested."

*Wimberly v. Ettenberg, supra,* 194 Colo. at 167, 570 P.2d at 538 (quoting *Ex–Cell–O Corp. v. City of Chicago,* 115 F.2d 627, 629 (7th Cir.1940)).

### A.

■ Plaintiff argues that GURA has conveyed the property to Clear Creek for less than fair value, resulting in a reduction of GURA's revenue in connection with the renewal project. As a result of such reduced revenue, plaintiff argues that GURA will spend a greater amount of tax revenue to pay its obligations, which amount would otherwise go to various public bodies. She argues that this reduction in GURA's revenue causes her an injury in fact because she and

other taxpayers will be deprived of such tax revenue. We are not persuaded.

Plaintiff's argument is based on the allocation of tax revenues generated in the plan area. The allocation was authorized by § 31–25–107(9), C.R.S.2001. The plan established a base year for property and city sales taxes. Such taxes collected in the plan area after the base year, subject to certain adjustments not at issue here, would be divided into two funds.

The first fund would receive the amount of property tax collected on the base year valuation and the city sales taxes equal to the tax collected in the base year. This fund would be paid to the public entities levying the taxes.

The second fund would receive the property tax collected on valuations above the base year valuations and city sales tax revenues in excess of the base year amounts. This tax increment revenue fund would be used by GURA to pay certain expenses, including the debt owed to the city. Any amounts remaining in the tax increment revenue fund after the debts of GURA are paid and the plan is completed will be returned to public entities levying the taxes. *See* § 31–25–107(9).

This tax allocation plan does not result in the creation of any new taxes. *Denver Urban Renewal Authority v. Byrne*, 618 P.2d 1374 (Colo.1980). In compliance with § 31–25–113, C.R.S.2001, the plan did not authorize GURA to levy, assess, or collect any form of tax. Therefore, the amount received from the sale of the property had no direct impact on tax revenues.

Under the statutorily authorized allocation of tax revenues, the flow of revenue at pre-plan levels is not affected by the proceeds GURA received from the sale of the property to Clear Creek. The sale of the property can only affect the tax revenues flowing to the tax levying public entities at some future time when the plan is completed and excess revenues in the tax increment revenue fund, if any, are paid to these entities.

To determine whether the sale price of the property will have the adverse affect on future tax revenues claimed by plaintiff, we must examine how the sale of the property interacts with the urban renewal plan. We must also examine how the plan may affect the generation of tax revenues.

GURA was authorized to sell real property acquired by it.

Such real property or interest shall be sold, leased, or otherwise transferred at not less than its fair value (as determined by the authority) for uses in accordance with the urban renewal plan. In determining the fair value of real property for uses in accordance with the urban renewal plan, an authority shall take into account and give consideration to the uses provided in such plan; the restrictions upon and the covenants, conditions, and obligations assumed by the purchaser or lessee; and the objectives of such plan for the prevention of the recurrence of slum or blighted areas.

Section 31–25–106(1).

The agreement between Clear Creek and GURA was not a simple buy and sell agreement. It contained a detailed plan for development of the property. It specified what development could occur on the property and set a timetable for that development. Thus, the determination of "fair value" must take into account these restrictions on the use of the property. It must also be "fair" in the sense that it does not maximize price at the expense of a successful redevelopment project. *See* § 31–25–106(1)("An authority may sell, lease, or otherwise transfer real property . . . as it deems to be in the public interest or necessary to carry out the purposes of [the Urban Renewal Law].").

Because the tax revenue paid into the tax increment revenue fund is limited to revenue generated above the base year taxes, the amount paid into that fund is substantially dependent on how successful the plan is in redeveloping the urban renewal area. The success of the plan depends to some degree on the ability of Clear Creek to devote the property to the uses required by the plan and to develop it in the manner required by GURA. Clear Creek's success will be influenced to some degree by the value GURA placed on the property because Clear

Creek's cost of development will affect the success of its project.

Thus, on the one hand, if the redevelopment is successful, it may enhance tax revenues so that the tax loss plaintiff claims GURA caused by the transaction with Clear Creek will not occur. On the other hand, if the redevelopment is unsuccessful, the alleged tax loss may occur and may never be recovered. But the outcome in either event will not be known until a remote time in the future, and therefore, plaintiff's claim of damage from lost tax revenues is mere speculation at this time.

■■■■ To satisfy the injury in fact prong of the *Wimberly* standing test, the injury must be direct and palpable. *Cloverleaf Kennel Club, Inc. v. Colorado Racing Commission,* 620 P.2d 1051 (Colo.1980); *Hughey v. Jefferson County Board of Commissioners,* 921 P.2d 76 (Colo.App.1996). A claimed injury that, as here, is presently speculative and that cannot be determined until a remote time in the future, is not sufficiently direct and palpable to support a finding of injury in fact. *see People v. McBurney,* 750 P.2d 916 (Colo.1988)(refusing standing to challenge constitutionality of statute based on speculation about its application to conduct not attributed to defendant); *See also Miccosukee Tribe v. Florida State Athletic Commission,* 226 F.3d 1226, 1229–30 (11th Cir.2000)("we should not speculate concerning the existence of standing, nor should we imagine or piece together an injury sufficient to give plaintiff standing when it has demonstrated none").

### B.

■■■■ Plaintiff also contends that the Urban Renewal Law grants her a legally protected interest such that she may enforce § 31–25–106(1). We disagree.

■■■■ To determine whether plaintiff has a legal interest that entitles her to judicial redress, we must determine whether the Urban Renewal Law reflects a legislative purpose to confer such an interest. *See O'Bryant v. Public Utilities Commission,* 778 P.2d 648 (Colo.1989). There are three factors to consider in making that determination: (1) whether the statute specifically creates such a right in the plaintiff; (2) whether there is any indication of legislative intent to create or deny such a right; and (3) whether it is consistent with the statutory scheme to imply such a right. *Cloverleaf Kennel Club, Inc. v. Colorado Racing Commission, supra.*

Our review of the Urban Renewal Law reveals no specific grant of authority to plaintiff to enforce § 31–25–106(1). Plaintiff argues that §§ 31–25–105(1)(a), 31–25–104(1)(d), and 31–25–109(12), C.R.S.2001, grant her such a right. However, these statutes only give urban renewal authorities the right to sue and be sued. They do not by specific language or by implication confer standing on any taxpayer who wishes to sue to enforce the Urban Renewal Law.

We also discern no legislative intent to grant taxpayers the right to enforce § 31–25–106(1) as claimed by plaintiff. The relevant statutes contain no mention of enforcement of the various provisions, nor do they provide direction as to the status of the renewal project while an enforcement action is pending.

Section 31–25–106(1) requires that transfer of the property occur "as rapidly as feasible" consistent with carrying out the renewal plan. In light of this provision, it is likely that if the General Assembly had intended that taxpayers have a right of enforcement, it would have provided directions, such as staying the project during litigation or requiring bonds to protect the taxpayers' interest if the project continued during litigation. Finding no such direction in the Urban Renewal Law, we conclude that the General Assembly did not intend to create a right in taxpayers to enforce the statute.

We also conclude that implying such a right in taxpayers is not consistent with the statutory scheme. Section 31–25–106(1) authorizes an urban renewal authority to determine the "fair value" of property it is selling. The statute also provides factors for the authority to consider in determining fair value. Application of these factors, which are set forth in part A above, requires the exercise of discretion and judgment by the authority, rather than a computation resulting in an exact value. The authority must consider

the objectives of the plan, the permitted uses for and the restrictions on use of the property, and the obligations placed on the purchaser. These are factors that involve public policy and political considerations about which reasonable people could disagree. They do not lead to a precise calculation of fair value. The statute does not indicate the weight to be given to each factor, so the authority may, if it chooses, place greater weight on any one of the factors. Under these circumstances, the right of a taxpayer to litigate the question of "fair value" is not consistent with the statutory scheme.

Thus, we conclude that plaintiff has not alleged an injury to a legally protected interest sufficient for standing here.

### C.

Plaintiff also cites *Dodge v. Department of Social Services, supra,* in support of her argument that taxpayers generally have standing to sue as interested parties. In *Dodge,* the supreme court concluded that injury in fact may be found in the absence of direct economic injury and that a claim that an expenditure of state funds violated a provision of the Colorado Constitution was sufficient to establish standing.

However, the court in *Dodge* concluded that the plaintiffs had sustained injury in fact to their interest that the government comply with the Colorado Constitution. Likewise, the cases relied on by the court in *Dodge* also involved such injury in fact. Here, plaintiff contends that defendants have violated the Urban Renewal Law. She does not claim that the Urban Renewal Law violates the state constitution. The only constitutional violation claimed by plaintiff is resolved against her in part II. Thus, the holding in *Dodge* does not support plaintiff's contention that a statutory violation alone confers standing. Plaintiff has cited no authority, and we are aware of none, that holds that a taxpayer's allegation of a statutory violation, without a sufficient allegation of actual injury, is sufficient to establish standing.

Accordingly, we conclude that plaintiff has not suffered an injury to a legally protected interest and has not suffered an injury in fact with respect to defendants' alleged violation of the Urban Renewal Law. Therefore, the trial court correctly held that plaintiff lacked standing to pursue her claims.

### II.

Plaintiff also contends that the trial court erred in concluding that GURA is not subject to the provisions of TABOR. Plaintiff argues that GURA is a local government and thus a "district" for purposes of TABOR. We are not persuaded.

TABOR defines a "district" as "the state or any local government, excluding enterprises." Colo. Const. art. X, § 20(2)(b). It requires that "districts" hold elections to obtain voter approval in advance for increases in taxes, spending, and direct or indirect debt. Colo. Const. art. X, § 20.

Because the parties agree that TABOR applies here only if GURA is a local government, the determination of whether GURA is a local government is dispositive of this issue.

The term "local government" is not defined by TABOR. As a result, we must rely on general rules of statutory construction in interpreting its meaning. In construing this term, we must give effect to the electorate's intent in enacting TABOR. The objective of TABOR is to prevent state and local government from enacting taxing and spending increases above TABOR's limits without voter approval. *Campbell v. Orchard Mesa Irrigation District,* 972 P.2d 1037 (Colo.1998).

The question whether an urban renewal authority is a "district" for purposes of TABOR is a matter of first impression. However, the supreme court addressed a similar issue in *Campbell v. Orchard Mesa Irrigation District, supra.* There, the supreme court determined that an irrigation district is not a "district" for purposes of TABOR because it is not a local government entity thereunder. While *Campbell* is not dispositive here, its analysis of what constitutes a local government entity under TABOR is instructive.

The irrigation district was found not to be a local government entity because (1) it did not levy taxes on the public at large for general governmental purposes, and (2) voting rights in the irrigation district elections were not based on the traditional "one per-

son, one vote" concept. The supreme court reasoned that because the district's assessments did not increase the burden on the taxpaying public that TABOR sought to regulate, and because the district's election process departed from the election process required by TABOR, irrigation districts are not local government entities for purposes of TABOR.

Here, GURA has no authority to levy taxes or assessments of any kind, § 31–25–113, and there is no provision for GURA to conduct elections of any kind. Thus, GURA shares, to some extent, the distinguishing characteristics of the irrigation district.

In *Nicholl v. E–470 Public Highway Authority*, 896 P.2d 859 (Colo.1995), the supreme court found the highway authority to be a district rather than an enterprise for purposes of TABOR because it had the power unilaterally to impose taxes. The converse of this, the inability to impose taxes, militates against a finding that GURA is a district for purpose of TABOR.

An urban renewal authority is defined in the Urban Renewal Law as a "corporate body." Section 31–25–103(1), C.R.S.2001. It is also referred to as a "body corporate and politic." Section 31–25–104(1)(b) C.R.S.2001. Using the "body corporate and politic" definition, the supreme court has held that the Denver Urban Renewal Authority is not a state agency or authority. *James v. Board of Commissioners*, 200 Colo. 28, 611 P.2d 976 (1980).

Accordingly, we conclude that GURA is not a local government and therefore not a district under TABOR. Thus, the trial court correctly concluded that GURA is not subject to the provisions of TABOR.

Because of our disposition of these issues, we need not address the remaining issues raised in this appeal, including the motion to dismiss the appeal filed by GURA and the city.

The judgment is affirmed.

Judge DAVIDSON and Judge CASEBOLT concur.