24CA1673 Colorado Advocates v Stolzmann 07-17-25

COLORADO COURT OF APPEALS

---

Court of Appeals No. 24CA1673
Boulder County District Court No. 24CV30482
Honorable Robert R. Gunning, Judge
Honorable Bruce Langer, Judge

---

Colorado Advocates for Public Safety, Anita Moss, and Robert Westby,

Plaintiffs-Appellants,

v.

Ashley Stolzmann, in her official capacity as a Boulder County Commissioner, Marta Loachamin, in her official capacity as a Boulder County Commissioner, and Claire Levy, in her official capacity as a Boulder County Commissioner,

Defendants-Appellees.

---

JUDGMENT AFFIRMED

Division IV
Opinion by JUDGE FREYRE
Gomez and Meirink, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced July 17, 2025

---

The Morath Law Firm, Susan K. Morath, Michele Blay, Boulder, Colorado, for Plaintiffs-Appellants

Ben Pearlman, County Attorney, David Hughes, Deputy County Attorney, Melanie Lewis, Assistant County Attorney, Boulder, Colorado, for Defendants-Appellees

¶ 1    Plaintiffs, the Colorado Advocates for Public Safety, Anita Moss, and Robert Westby, appeal two district court orders granting a motion to dismiss filed by defendants, Ashley Stolzmann, Marta Loachamin, and Clarie Levy, in their official capacities as commissioners on Boulder County's Board of County Commissioners (BOCC).  We affirm.

## I.    Background

¶ 2    In 1966, the Colorado General Assembly enacted legislation permitting counties to prohibit the discharge of firearms in unincorporated areas, with certain exceptions.  Ch. 4, sec. 1, § 36-22-1 to -4, 1966 Colo. Sess. Laws 4-5.  Over the years, Boulder County has adopted a series of resolutions prohibiting firearms discharge in the most densely populated areas of Sugarloaf Mountain, a residential community in the foothills.  Moss and Westby have resided in Sugarloaf since 1976.  Their property borders United States Forest Service (USFS) land.  Together, Moss and Westby founded the Colorado Advocates for Public Safety, a nonprofit corporation whose mission is to address public safety issues, such as those involving firearms, on behalf of the Sugarloaf residents.

¶ 3    In 2022, the BOCC, after a public hearing, adopted Resolution No. 2022-096 (the 2022 Resolution), which further expanded the Sugarloaf no-discharge area to include a large portion of USFS land that borders Sugarloaf. Shortly thereafter, the BOCC received complaints from hunters questioning the BOCC's legal authority to restrict hunting on USFS land. In December 2023, Commissioner Levy sent the Sugarloaf residents an email informing them that continued enforcement of the firearms discharge ban on USFS land would subject the county to legal challenges from the USFS that carried a high risk of being resolved against it. Several months later, Moss wrote to the Boulder County Sheriff's Department to report that hunters were discharging firearms in the Sugarloaf area in violation of the 2022 Resolution and requesting enforcement of the resolution. The sheriff informed Moss that the county could not legally enforce the ban on federal land.

¶ 4    In May 2024, the BOCC conducted a public hearing to consider rescinding the 2022 Resolution. The BOCC heard from community members, the sheriff's department, Colorado Parks and Wildlife, and the USFS. At the conclusion of the hearing, the BOCC rescinded the 2022 Resolution and adopted Resolution No. 2024-

040 (the 2024 Resolution), which prohibited firearms discharge in the Sugarloaf no-discharge area for any reason except for hunting on the USFS land within the area's boundaries.

¶ 5 Plaintiffs filed a C.R.C.P. 106(a)(4) action challenging the BOCC's adoption of the 2024 Resolution. Their complaint alleged that the BOCC abused its discretion by allowing hunting on USFS land in the Sugarloaf no-discharge area because it endangered the Sugarloaf residents. The complaint further alleged that the BOCC had misinterpreted federal preemption law concerning the county's regulation of national forests. Plaintiffs also sought a declaration, under C.R.C.P. 57, that the 2024 Resolution was invalid and that the 2022 Resolution should be reinstated.

¶ 6 The BOCC filed a motion to dismiss the amended complaint under C.R.C.P. 12(b)(1), alleging that plaintiffs lacked standing. It argued that plaintiffs had not suffered an injury in fact because the injuries alleged were speculative. It further argued that the BOCC's adoption of the 2024 Resolution was a legislative act not reviewable under C.R.C.P. 106(a)(4), and that the statute under which the resolution was adopted, section 30-15-302, C.R.S. 2024, did not confer a legally protected interest on plaintiffs.

¶ 7    While the motion to dismiss was pending, plaintiffs filed a motion for an immediate temporary and permanent injunction staying the 2024 Resolution from taking effect and continuing enforcement of the 2022 Resolution through the upcoming hunting season. Moss and Westby testified at the hearing. Moss described previously seeing discarded razor blades from bow hunting in the Sugarloaf area and testified that years earlier, she had seen a vehicle speeding down the road behind her house in pursuit of a deer on USFS land. Westby testified to the negative effects of hunting described by his neighbors over the years, including a dog being shot, children observing shot animals, and gunpowder starting a fire during muzzleloader season.[1] The district court denied plaintiffs' motion and found that they did not have a reasonable likelihood of success on the merits of their Rule 106(a)(4) claim because they had not shown that the BOCC's adoption of the 2024 Resolution was a quasi-judicial act. Instead, the court found that the 2024 Resolution concerned public policy

---

[1] The court found Westby's statements of third parties to be hearsay and inadmissible for their truth. It admitted them only for their effect on him.

matters of a general and prospective nature that did not involve application of pre-existing legal standards to an identifiable person or group. Alternatively, the district court found that if the BOCC's action was quasi-judicial, plaintiffs failed to show it was arbitrary or capricious.

¶ 8 A different district court judge considered and granted the BOCC's motion to dismiss. The court concluded that plaintiffs' fear of being put at increased risk of harm from firearms discharges was no different from the other residents living in the Sugarloaf no-discharge area, that their claimed injury was indirectly caused by the BOCC's adoption of the 2024 Resolution, and that any safety concerns regarding hunting were speculative. The court rejected plaintiffs' claims that prior BOCC resolutions or Rule 106(a)(4) gave them a legally protected interest and dismissed the case for lack of jurisdiction.

## II. Standing

¶ 9 Plaintiffs contend that the district court erroneously concluded that they lacked standing. We disagree.

### A. Standard of Review and Applicable Law

¶ 10    Standing is a threshold issue that must be satisfied to decide a case on its merits. *HealthONE v. Rodriguez*, 50 P.3d 879, 892 (Colo. 2002). Because standing is a jurisdictional matter, we review the district court's determination de novo. *Friends of the Black Forest Reg'l Park, Inc. v. Bd. of Cnty. Comm'rs*, 80 P.3d 871, 876-77 (Colo. App. 2003). We may consider any evidence submitted on the issue to determine whether a party has standing. *Bd. of Cnty. Comm'rs v. Bowen/Edwards Assocs., Inc.*, 830 P.2d 1045, 1053 (Colo. 1992); *Rangeview, LLC v. City of Aurora*, 2016 COA 108, ¶ 11. "Whether a party has standing is determined as of the time the action is filed." *Am. Comp. Ins. Co. v. McBride*, 107 P.3d 973, 976 (Colo. App. 2004) (citing *Grossman v. Dean*, 80 P.3d 952 (Colo. App. 2003)).

¶ 11    To establish standing, a party must show that they have suffered an injury in fact to a legally protected interest. *Hickenlooper v. Freedom from Religion Found., Inc.*, 2014 CO 77, ¶ 8 (citing *Wimberly v. Ettenberg*, 570 P.2d 535, 539 (Colo. 1977)).

¶ 12    A party may satisfy the first prong — an injury in fact — if they have suffered a tangible injury, such as physical damage or

economic harm, or an intangible injury, such as a deprivation of a legally created right. *See Ainscough v. Owens*, 90 P.3d 851, 855 (Colo. 2004); *see also City of Greenwood Village v. Petitioners for Proposed City of Centennial*, 3 P.3d 427, 437 (Colo. 2000) ("[H]arm to intangible values can satisfy the injury-in-fact requirement."). However, the remote possibility of a future injury or an injury that is overly indirect and incidental will not convey standing. *Ainscough*, 90 P.3d at 856; *Barber v. Ritter*, 196 P.3d 238, 246 (Colo. 2008). To determine whether there is an injury in fact, we accept as true the allegations set forth in the complaint. *Ainscough*, 90 P.3d at 857.

¶ 13 A party may establish the second prong — a legally protected interest — if they show they have "a claim for relief under the constitution, the common law, a statute, or a rule or regulation." *Id.* at 856. Like an injury in fact, a legally protected interest may be tangible, such as an interest based on a contract or property rights, or intangible, such as an interest in free speech or in having a government that acts within constitutional boundaries. *Id.* The legally protected interest prong recognizes that "parties actually protected by a statute or constitutional provision are generally best

7

situated to vindicate their own rights." *Greenwood Village*, 3 P.3d at 437.

¶ 14    "Courts cannot, under the pretense of an actual case, assume powers vested in either the executive or the legislative branches of government." *Wimberly*, 570 P.2d at 538. "By requiring the plaintiff to show an injury in fact, . . . standing screens out plaintiffs who might have only a general legal, moral, ideological, or policy objection to a particular government action." *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 381 (2024).

### B.    Analysis

#### 1.    Injury In Fact

¶ 15    We first conclude that plaintiffs lack standing because their alleged injury is not particularized enough to constitute an injury in fact. Plaintiffs alleged that living with the threat of physical harm due to discharging firearms on land near their home caused anxiety and stress. A possibility of future injury, and "an injury that is overly 'indirect and incidental' to the defendant's action," however, is not enough to confer standing. *Freedom from Religion*, ¶ 9 (citation omitted). Plaintiffs' amended complaint does not allege that the BOCC directly caused them injuries, and the testimony

8

from the injunction hearing, while describing prior incidents, was not admissible for its truth. Indeed, the fear and threat of physical harm alleged requires actions by third parties (hunters), not the BOCC. *See Wimberly*, 570 P.2d at 539. And an act that permits a third party to engage in conduct that impacts a plaintiff is too indirect and incidental to constitute an injury in fact. *See 1405 Hotel, LLC v. Colo. Econ. Dev. Comm'n*, 2015 COA 127, ¶¶ 44-52 (summarizing cases distinguishing between conduct that directly causes an injury and conduct that encourages or promotes a third party to engage in conduct that causes a plaintiff's injury).

¶ 16 For the same reasons, we conclude that the plaintiffs' alleged injury is not particularized to them; instead, it is similar to all the Sugarloaf residents affected by the 2024 Resolution. *See City of Lakewood v. DeRoos*, 631 P.2d 1140, 1143 (Colo. App. 1981) (finding property owners adjacent to a road expansion did not have damages different in kind from the general public).

### 2. Legally Protected Interest

¶ 17 Second, we conclude that plaintiffs lack standing because they do not possess a valid legally protected interest to meet standing requirements. Plaintiffs allege four sources of their legally protected

interest: (1) section 30-15-302; (2) C.R.C.P. 106(a)(4); (3) the right to nonarbitrary exercise of discretion by governmental officials; and (4) their property ownership. The legally protected interest requirement promotes judicial self-restraint. *Freedom from Religion,* ¶ 10. "This prudential consideration recognizes 'that unnecessary or premature decisions of constitutional questions should be avoided, and that parties actually protected by a statute or constitutional provision are generally best situated to vindicate their own rights.'" *Id.* (citation omitted).

### a.   Section 30-15-302

¶ 18   We aim to effectuate the legislature's intent, and, in doing so, we look first to the statute's plain language, giving words and phrases their plain and ordinary meanings. *Oakwood Holdings, LLC v. Mortg. Invs. Enters. LLC*, 2018 CO 12, ¶ 12. "If the statutory language is clear, we must apply it as written and need not resort to other rules of statutory construction." *Id.*

¶ 19   As relevant here, section 30-15-302 provides:

> (1)   The board of county commissioners . . . may designate, by resolution, areas in the unincorporated territory of such county in which it is unlawful for any person to discharge any firearms, except a duly

10

authorized law enforcement officer acting in the line of duty . . . .

(2)   No area shall be so designated under authority of subsection (1) of this section unless it has an average population density of not less than one hundred persons per square mile in the area designated, and, before making any such designation, the board of county commissioners shall hold a public hearing thereon at which any interested person shall have an opportunity to be heard. . . .

¶ 20   To determine whether a statute confers a legal interest requires consideration of three factors: "(1) whether the statute specifically creates such a right in the plaintiff[s]; (2) whether there is any indication of legislative intent to create or deny such a right; and (3) whether it is consistent with the statutory scheme to imply such a right." *Olson v. City of Golden*, 53 P.3d 747, 752 (Colo. App. 2002).

¶ 21   Plaintiffs contend that subsection (2) of section 30-15-302 provides them a legally protected interest and that by directing the sheriff's department not to enforce the 2022 Resolution, the BOCC impaired this interest.  We disagree for two reasons.  First, nothing in the plain language of the statute specifically creates such an interest or provides judicial redress for landowners seeking to

11

compel a county sheriff to enforce the limits of a county's resolution. Instead, the statute grants the BOCC the authority to create no-discharge areas when certain parameters are satisfied (like population density). Second, the record shows that the BOCC complied with the statute in rescinding the 2022 Resolution by conducting a public hearing before adopting the 2024 Resolution.

¶ 22  Accordingly, we conclude that section 30-15-302 does not confer a legally protected interest on plaintiffs.

### b.  C.R.C.P. 106(a)(4)

¶ 23  Plaintiffs next claim that Rule 106 provides a legally protected interest to pursue judicial review of the BOCC's action under section 30-15-302 and that the BOCC's actions are quasi-judicial and not quasi-legislative as found by the district court.

¶ 24  Judicial review under C.R.C.P. 106(a)(4) is only available when (1) a governmental body or officer or any lower judicial body exercising judicial or quasi-judicial functions has exceeded its jurisdiction or abused its discretion; and (2) there is no plain, speedy, and adequate remedy. *See State Farm Mut. Auto. Ins. Co. v. City of Lakewood*, 788 P.2d 808, 813 (Colo. 1990). Quasi-judicial action generally involves "a determination of the rights, duties, or

12

obligations of specific individuals based on the application of existing legal standards to facts developed at a hearing." *Verrier v. Colo. Dep't of Corr.*, 77 P.3d 875, 879 (Colo. App. 2003). To be deemed quasi-judicial, the action must also "adversely affect the protected interests of specific individuals." *Copley v. Robinson*, 224 P.3d 431, 435 (Colo. App. 2009); *see Hellas Constr., Inc. v. Rio Blanco County*, 192 P.3d 501, 504 (Colo. App. 2008). In contrast, action necessary to carry out existing legislative policies is deemed administrative and is not reviewable under C.R.C.P. 106(a)(4). *See Verrier*, 77 P.3d at 879.

¶ 25    As our supreme court stated:

> If the governmental decision is likely to affect the legal interests of specific individuals, and if the governmental decision is reached through the application of preexisting legal standards or policy considerations to present or past facts developed at a hearing, then "one can say with reasonable certainty that the governmental body is acting in a quasi-judicial capacity in making its determination."

*Colo. State Bd. of Land Comm'rs v. Colo. Mined Land Reclamation Bd.*, 809 P.2d 974, 981 (Colo. 1991) (citation omitted).

¶ 26    Legislative actions, on the other hand, involve public policy matters that are permanent or general in nature, and generally

13

prospective in nature. Legislative action is not normally restricted to identifiable persons or groups. *Cherry Hills Resort Dev. Co. v. City of Cherry Hills Village*, 757 P.2d 622, 625 (Colo. 1988); *Native Am. Rights Fund, Inc. v. City of Boulder*, 97 P.3d 283, 287 (Colo. App. 2004).

¶ 27 We conclude that the BOCC's adoption of the 2024 Resolution was quasi-legislative, and thus, Rule 106 does not confer a legally protected interest to plaintiffs. To begin, as explained above, plaintiffs have no legally protected interest under section 30-15-302 and, therefore, have no legally protected interest underlying their Rule 106(a)(4) claim. Additionally, the record shows that the 2024 Resolution was prospective and applicable to all Sugarloaf residents, not just plaintiffs or those residents who shared borders with USFS land. Further, there is no evidence that the 2024 Resolution applied pre-existing legal standards or applied only to immediate parties claiming an interest.

¶ 28 We are not persuaded otherwise by plaintiffs' claim that the BOCC held a hearing before adopting the 2024 Resolution, thereby rendering the proceeding quasi-judicial. Unlike a quasi-judicial proceeding, the BOCC did not apply existing legal standards to facts

developed at the hearing; instead, it sought public input before making a policy decision to enact a resolution with prospective effect. *See Widder v. Durango Sch. Dist. No. 9-R*, 85 P.3d 518, 527 (Colo. 2004); *see also Native Am. Rights Fund*, 97 P.3d at 287. Accordingly, under these circumstances, we conclude the BOCC's enactment of the 2024 Resolution was legislative in nature and that Rule 106(a)(4) did not confer a legally protected interest.

         c.      Nonarbitrary Exercise of Discretion by BOCC

¶ 29    Relying on *Ainscough,* 90 P.3d at 857 plaintiffs next contend that they have a legally protected interest in the nonarbitrary exercise of discretion by governmental officials and that the BOCC acted arbitrarily by (1) instructing the sheriff's department not to enforce the 2022 Resolution after receiving information that doing so might violate federal law; (2) instructing the Sugarloaf residents that it considered the 2022 Resolution ineffective without providing a basis for its decision; and (3) adopting the 2024 Resolution without presenting evidentiary support. But unlike the *Ainscough* case, where the plaintiffs asserted violations of the Colorado Constitution, the payroll deduction statute, and the Administrative Procedure Act by an executive order that eliminated payroll

15

deductions for union dues, plaintiffs have not identified anything other than section 30-15-302, which we have already determined did not confer a legally protected interest, to support their claim. And the record shows that the BOCC complied with the statute by holding a public hearing before enacting the 2024 Resolution.

### d. Property Ownership

¶ 30 Last, plaintiffs contend that their ownership of property adjacent to USFS land confers on them a legally protected interest under the Fourteenth Amendment to the United States Constitution. They argue that the 2024 Resolution damages their property rights. Again, we disagree and find that due to the lack of a particularized injury, plaintiffs lack standing. Plaintiffs rely on zoning cases in which an applicant sought to develop their property and had a legally protected interest in ensuring the lawfulness of rezoning decisions. *See, e.g.*, *Reeves v. City of Fort Collins*, 170 P.3d 850, 852 (Colo. App. 2007). In such cases, owners of property adjacent to rezoned land have standing to challenge rezoning that adversely affects their property. But here, no rezoning or development has occurred, nor have plaintiffs alleged an injury directly resulting from the 2024 Resolution. Accordingly, we

discern no error in the district court's conclusion that plaintiffs lack standing.

## III. Additional Contentions

¶ 31    Plaintiffs contend that the district court erred by dismissing their claims without separately ruling on their declaratory judgment claim, and they ask this court to reverse the denial of their motion for preliminary injunction. Because we have concluded that plaintiffs lack standing, we need not address their declaratory judgment claim. *See State v. Hill*, 2023 CO 31, ¶ 10 (to demonstrate a legally protected interest for a declaratory judgment, a party must assert a legal basis on which a claim for relief can be granted). Additionally, because plaintiffs' preliminary injunction request is conclusory and not developed, we decline to address it. *See Antolovich v. Brown Grp. Retail, Inc.*, 183 P.3d 582, 604 (Colo. App. 2007) (declining to address underdeveloped arguments). At any rate, given that plaintiffs have not established their standing to bring this action, they are not entitled to any injunctive relief.

## IV. Disposition

¶ 32    The judgment is affirmed.

JUDGE GOMEZ and JUDGE MEIRINK concur.